T. C. JORDAN ET AL. v. W. W. PEAK AND WIFE.

| 38 | 429 |
| 74 | 569 |

1. A deed of trust executed by husband and wife to secure a debt due from the husband, is such a conveyance of an interest in land as is contemplated by the act defining the mode of conveying property in which the wife has an interest.
2. The husband and wife may, by deed of trust duly executed and acknowledged in the manner prescribed by law, legally encumber the homestead to secure the payment of a debt.
3. A sale by the trustee under such a deed of trust is not a *forced sale* in contemplation of law.

APPEAL from Dallas. Tried below before the Hon. Hardin Hart.

Suit by Peak and wife to enjoin T. C. Jordan from selling under deed of trust certain town lots in Dallas, conveyed to him as trustee by Peak and wife, with power of sale to secure the payment of a note for $7642.55, due Leon & H. Blum. The note bears date March 25, 1871, and was signed by W. W. Peak, and J. W. Smith, his partner; it was given for goods purchased by the firm of Peak & Smith.

The lots were claimed and occupied as a homestead by Peak and wife. The appellants denied the existence of the homestead right in Peak and wife, set up the execution of the trust deed by them, their failure to pay the money to secure which the deed was made, and prayed for a dissolution of the injunction.

Among others the following instructions were given to the jury, viz :

"You are instructed that a deed of trust on the homestead is inoperative, and the wife is not bound by her signature to the same securing a debt made by her husband, in which she is in nowise interested, and which did not inure to the benefit of her separate property.

"If you are satisfied from the evidence that the note mentioned was given for goods, wares and merchandise, sold by defendants, Leon & H. Blum, to plaintiff, W. W. Peak, and J. W. Smith, and that plaintiff, M. F. Peak, afterwards joined W. W. Peak, her husband, in the execution of said trust deed to secure the payment of the same, and that there was no new consideration from said Leon & H. Blum to the said M. F. Peak, then and in that event her undertaking was and is not binding on her, and said trust deed inoperative and of no effect as to her."

There was a verdict for appellees, and judgment making the injunction perpetual.

*Terrell & Walker*, for appellants.—We submit that the trust deed to T. C. Jordan, for the benefit of L. & H. Blum, of March 25, 1871, conveyed, for the purposes of the trust, all the right which Peak and his wife had in the property, and this without reference to whether the property was then the homestead of appellees, or became the place of their residence afterwards. The constitutional provision affording protection to the homestead against forced sale, was certainly never intended to operate as a restriction upon the rights of owners to alienate as they might desire, when done voluntarily and in the manner prescribed by the statute, in Article 1003, Paschal's Digest.

If the entire fee may thus be disposed of, what reason is there why a less estate may not be? Cannot a term of years be acquired in the homestead property by the voluntary deed of the parties, made in conformity with the statute? Cases must often arise where protracted absence of the family, with no intention to remain permanently abroad, would demand the exercise of such a power for the protection of the property. If, then, a less estate

than a fee may be carved out, where is the limitation upon the right to sell the whole, or a part, conditionally, or to authorize another to sell it upon contingencies prescribed by the voluntary act of the owners in the instrument creating the power? The only limitations on the power of alienation are found in the statute which prescribes the form, and in the Constitution, which will not permit a sale unless it be voluntary. The decision in Sampson & Keene v. Williamson, 6 Texas, 102 (expressly affirmed in Burback v. Sykes, by a new court, in 24 Texas, 214), enunciates plainly the doctrine that the husband and wife may bind the homestead by mortgage, with power of sale over the separate acknowledgment of the wife.

This decision was re-affirmed by the entire court in Lee v. Kingsbury, 13 Texas, 71, in which Judge Wheeler says, "that the husband, with the concurrence of his wife, may, in the forms prescribed by law, create a mortgage on the homestead, has been heretofore decided."

And again, in Stuart v. Mackey, 16 Texas, 58, the decision in 6 Texas, 102, and the case of Lee v. Kingsbury, 13 Texas, 71, were both referred to and approved. In Stuart v. Mackey the Chief Justice says: "A mortgage by husband and wife of the homestead, to be valid, must be conditioned with a power of sale by the mortgagee, upon default of payment." In this case the appellants invoke no aid from the courts in the execution of the power. They seek no "forced sale," as that term is defined by this court, but ask only permission to execute a power not revokable, created by the voluntary act of the appellees, and in the manner pointed out by the statute.

The doubts which are understood to exist in the minds of this court as to the correctness of the decision in Sampson & Keene v. Williamson, is our excuse for discussing a proposition which we have long regarded as settled by that case. It had already been held in Hollis and Wife v.

Francois & Border, 5 Texas, 202, that the wife's right to mortgage her separate property for the payment of her husband's debts was beyond doubt. Now this could only be done by the wife in the manner pointed out by the statute (Pas. Dig., Art., 1003), and the same section contains provision for an alienation of the homestead. A careful analysis of that section will, we respectfully submit, show that the manner prescribed for alienating the homestead is not restricted to conveyances of the fee by deed, but applies, in terms, to "any other writing purporting to be a conveyance" of "any interest" in the land. The deed of trust or mortgage, with power of sale (for under our system they are held to have the same effect), did purport to be a conveyance. Now, regarding that instrument as a mortgage, was it a conveyance?

The very language in which a mortgage is defined by the following authorities answers the question: 4 Kent's Com., 138; Bov. Law Dic.; Walk. Am. Law, 293; United States v. Foster, 2 Cranch, 358; Conrad v. Atlantic Ins. Co., 1 Peters, 441; 1 Hilliard on Mortgages, 2; Porter v. Green, 4 Iowa, 571.

Opposed to the dissenting opinion of Judge Lipscomb in 6 Texas, will be found the lucid opinion of Chief Justice Shaw, defining the estate of the mortgagee, in Ewer v. Hobbs, 5 Metcalf, 3, to which we invite attention. That opinion is approved by Mr. Hilliard as settling the doctrine that as between mortgagor and mortgagee, for the purposes of the security, the mortgage is to be regarded as a conveyance of the fee.

The position assumed by counsel, that the law invests the wife with a separate estate in the homestead, and that she cannot encumber the same for the husband's debts, is based on an assumption which we deem erroneous. In this case the debt was a community debt, for the satisfaction of which the community property was liable, and

the homestead right of his wife, if it existed, invested her technically with no separate estate in the land. The homestead right is not technically an estate in the land, but only an inchoate right thereto. (Manson v. Atkison, 37 N. H., 337.)

The homestead exemption is a mere personal privilege, which does not run with the land, and which the State reserves to the debtor and his family, but which, like any other privilege, he and his wife may waive or transfer, if done in conformity with law. (Smith v. Bracket, 36 Barbour, 574.)

The homestead exemption law confers on husband and wife a personal privilege, which may be insisted on or waived at their option. It forces no privilege on them, nor does it compel them to withhold the appropriation of their property from the satisfaction of their debts. (Chamberlain v. Lyell, 3 Mich., 458.)

The authority of Sampson & Keene v. Williamson, and Hollis and Wife v. Francois & Border, has been shaken by no subsequent decision.

But we submit that if the law was erroneously construed in Sampson & Keene v. Williamson, it was in not giving effect to the deliberate purpose solemnly expressed in the mortgage, and in not holding that a judicial sale giving effect to the agreement of the parties was not that character of forced sale inhibited by the Constitution. The error, if there was any, was not in going too far, but in not going far enough.

But since that decision, twenty years have elapsed, during all which time the profession has recognized and acted on the authority of that case as settling the law. Under it rights were supposed to have been acquired everywhere, which, if this decision were overruled, would be unsettled at the option of the wife. Again, it must be remembered that since that decision, and in view of it as

28

settling the law, the present Constitution, which this court is asked to construe anew, was adopted, and we must suppose that the terms adopted in the homestead clause of that instrument were used with reference to the construction which they had already received. It follows that even if this court did violence to the spirit of the homestead clause in the Constitution of 1845, by its decision in Sampson & Keene v. Williamson, no such result can follow now in construing a provision in the present Constitution, almost identical in terms, and adopted with the judicial construction it had already received in that case.

*Good & Bower*, also for appellants.—It will be contended by appellee that a trust deed is not the alienation contemplated by the Constitution. As the common law of England is in force here, and alienations are creatures of that law, the Convention is presumed, in the absence of express provision to the contrary, to have used words with their common law signification. By that law an alienation of an estate is defined to be any method by which it is voluntarily resigned by one and acquired by another. (2 Bla. Com., 287.) See Tom. & Bouv. Dic., title Alienation: "An estate is the interest a person hath in property. This may be a freehold of inheritance, not of inheritance less than a freehold, or on condition." Among the last is *mortuo vadio*, and this is divided by Mr. Tomlin into: 1. Mortgages of freehold and inheritance. 2. Terms of years.

As to the effect of mortgages, see 1 Hilliard on Mortgages, 150, 151, 157, 158; 1 Peters' U. S., 441, 442; Parson's Law of Business, 490, 491. If the mortgage or trust deed is not an alienation, it does not come within the constitutional inhibition; it can be made by the husband alone, and the object of this provision is defeated. If it is an

alienation, then the consent of the wife is indispensable
to its validity.    Both at law and equity the owner of the
fee could carve out and alienate a less estate.    The object
of the Constitution was to require the "consent of the
wife, in such manner as may be prescribed by law" to
every alienation.    The "manner prescribed by law" ex-
tends to "any estate or interest in property of the wife,"
or "the homestead of the family."    (Pas. Dig., Articles
1003, 1005.)

We know no judicial analysis of Article 1003, upon
contracts involving the homestead, but it has been the
subject of interpretation of the wife's contracts regarding
her separate estate.    (Hollis v. Francois, 5 Texas, 195.)

Should doubt exist, it ought to be dispelled by the ex-
haustive logic of Hemphill, C. J., in Sampson *et al.* v.
Williamson, 6 Texas, 109.    (See also Lee v. Kingsbury,
13 Texas, 71 ; Stuart v. Mackey, 16 Texas, 58.)

*H. Barksdale*, for appellees.—It is manifest that the
language employed, both in the Constitution and law,
we respectfully submit, looks alone to an absolute dispo-
sition of the homestead by husband and wife, and confers
no power on them to encumber the same by mortgage or
otherwise.    To encumber the homestead by deed of trust
or mortgage is not an alienation of it, and is in violation
of the spirit and letter of the Constitution and law.

In support of the foregoing propositions the honorable
court is referred to the very able and conclusive argument
of Judge Lipscomb, and to the authorities cited by him
in the case of Sampson & Keene v. Williamson, 6 Texas,
118.

A mortgage with power to sell is not distinguishable
from a deed of trust, and any distinction attempted is
purely technical.    (Robertson v. Paul, 16 Texas, 474.)

The doctrine is now firmly established that a mortgage

is but a security for the debt—a mere "charge upon the land"—and that the mortgagee has, in effect, but a chattel interest. (Sampson & Keene v. Williamson, 6 Texas, 122; Buchanan v. Moore, 22 Texas, 541; 4 Kent, 160; 1 Wall. U. S. R., 53; 2 Story's Eq. Jur., §§ 1015–1023.)

Is the undertaking of the wife, to secure the debt of her husband and another, by deed of trust, made during coverture on the homestead, binding upon her? It will be seen by the honorable court that she is not a co-obligor in the note attempted to be secured, and the statement of facts show that the wife signed the trust deed without consideration to herself, or benefit to her separate estate, and that appellants, Leon & H. Blum, sold the goods to W. W. Peak and one J. W. Smith, before the execution and delivery of said trust deed, on the faith and credit alone of payment by them. Is the wife's undertaking, under these circumstances, binding on her?

This court says, in the case of Westbrooks v. Jeffers: "But it may well be doubted whether a widow is in any case bound to pay the debt of her deceased husband on a promise made during coverture, unless it be to pay for goods furnished during coverture on the credit of her separate estate." (See Westbrooks v. Jeffers, 33 Texas, 90; 11 Wendell, 312; 2 Sandf., 311; 15 Geo., 358; 1 Washburn, 325.)

Judge Parsons says: "The current of recent decisions in England is in favor of the view that the promise of a married woman has not, when given, any legal effect, and therefore is not voidable, but void." (1 Pars. on Contr.)

" The wife's disability to contract," says the same author, "is almost entire at common law." (p. 286 ; see also 1 Texas, 483.) But in equity it is said she may make contracts touching her separate estate, and encumber the same by mortgage or otherwise. We respectfully submit that the doctrine of the cases of Cartwright v. Hollis,

and Hollis and Wife v. Border, 5 Texas, has been in part overruled; and as we understand the subsequent cases, the court do not assent to the broad proposition that a married woman may encumber her separate property at pleasure.

Judge Moore says : " The separate property of the wife cannot be charged on an account made, or on a note executed, by her, jointly with her husband, for necessaries furnished for her husband, or for other members of her family than herself and children." (Hutchinson v. Underwood, 27 Texas, 255 ; Harrell v. Babb, 19 Texas, 346 ; Kavenaugh v. Brown, 1 Texas, 481.)

Now, we ask, if her separate property cannot be held liable on her express promise to pay a note, in which her husband joins, for necessaries furnished to him, would a deed of trust or mortgage on said property to secure the note be binding, or of any effect ? We respectfully submit it would not.

The better doctrine is, that the wife's separate estate is a "statutory estate," and that no appeal will be allowed to other systems, or to the equitable powers of the court, independent of the statute, to charge the same. Says Judge Coke, "Whether such an estate can be made liable in any other mode than that prescribed by the statute, under any circumstances, it is not necessary now to decide." (See Stansbury v. Nichols, 30 Texas, 149 ; Pas. Dig., Arts. 4643 and 4644.)

We have cited and commented on above authorities in order to show the tendency of this court on the subject of married women contracting and binding their separate estate, and by analogy to arrive at her power to make contracts which will bind her homestead. It is said by Judge Wheeler, "The wife has at least an equal interest in the exemption of the homestead." (See Traynham v. Jackson, 15 Texas, 170.)

*J. W. Ferris*, also for appellees.

McADOO, J.—The record in this case presents the naked question, Can the husband and wife, by deed of trust duly executed and acknowledged in the manner prescribed by law, legally encumber the homestead to secure the payment of a debt?

The bill of exceptions and the assignment of errors present some other points; but a proper disposition of the main question disposes of all the points raised in the record.

Now, what is the case presented by this record?

Mrs. Peak joined her husband in the execution of a deed of trust, upon property claimed as the homestead of the family, to secure the payment of a sum of money due by note to L. & H. Blum. The conveyance was made to F. C. Jordan, as trustee, and was acknowledged by the husband and wife in the manner pointed out by law. The deed of trust is in the usual form of such instruments, and contains in it the power of the trustee to advertise and sell the property on the non-payment of the debt, as stipulated in the deed. The note was not paid at maturity, and the trustee was proceeding to execute the trust, by sale of the property, when Peak and wife sued out a writ of injunction to stay further proceedings by the trustee. On final trial in the District Court, a decree was rendered perpetuating the injunction, and the defendants in the court below have brought the case to this court by appeal.

The question involved in this case is not a new one in this court. It was fully presented, was ably and thoroughly discussed, and clearly decided in Sampson & Keene v. Williamson, 6 Texas, 102, in a well considered opinion of Chief Justice Hemphill.

In that case there was a dissenting opinion by Judge

Lipscomb, characterized by the ability of that disting-uished judge.    But, notwithstanding the dissenting opin-ion of Judge Lipscomb in that case, this court has uniformly held in all subsequent cases presenting the question, that the rule laid down by the court on this subject in that case was settled law.

In the case of Hollis and Wife v. Francois & Border, 5 Texas, 195, the court held that the wife has the power to join her husband in a mortgage of her own lands, for the reason that she can join with him in their absolute sale; and the rule was said, in that case, to be found in all the authorities.

This authority, to bind her separate estate for the pay-ment of debts, extends to the debts of the husband as well as debts contracted for her separate use and benefit. In order thus to encumber her separate estate it is only necessary that the deed be executed by her in the mode pointed out by law.

If she can, by deed of trust or mortgage, with power in the trustee or mortgagee to sell on the non-payment of the debt, encumber her separate estate, why can she not so encumber the homestead?    And her power to do so is based on the same rules in Sampson & Keene v. William-son.    Is not her power to do so stronger, even, in the case of the homestead than in the case of her separate prop-erty?    The fee in the land in the latter case is in her; in the former, if community property, it is in the husband. In the latter case, she, with him, charges the estate with the mortgage; in the former he does so with her consent, obtained in legal form.    His power to sell the homestead absolutely, or to convey it by gift, or to encumber it in any manner he sees fit, is limited only by her consent, ob-tained in the mode pointed out by law.    He cannot, it is true, so bind it by mortgage, even with her consent, that it can be subjected to forced sale; nor could he so bind it

if he were a single man, and the head of a family; not because the homestead cannot be conveyed, or a mortgage or trust cannot be created upon it, but because a *forced* sale of it is forbidden by the Constitution of the State. More than this, there is no limit to the power of conveyance or disposal of the homestead, with the formal legal consent of the wife.

If property can be legally encumbered at all by mortgage, with power to the mortgagee to sell, then a single man who is the head of a family can so mortgage his homestead; for there is no legal prohibition or restriction whatever, except the prohibition of forced sale. If a married man, he has precisely the same control over the homestead as he would have if single, if the wife join with him in the deed, in proper form of acknowledgment.

In no case, however, and under no circumstances, can the homestead be bound by a mortgage which needs to be enforced by a foreclosure; and no sale of it by reason of such mortgage can be effected under an order or decree of a court, or under any process of a court. The prohibition of forced sale is absolute and complete.

It is urged that the opinion of Chief Justice Hemphill in Sampson & Keene v. Williamson was *obiter dicta*, because in that case the mortgage contained no power in the mortgagee to sell, but could only become operative by a foreclosure and forced sale; and the mortgage was adjudged to be inoperative and void in that case.

But the whole question of the power to charge the homestead *at all* was pressed upon the court in the arguments and briefs of counsel, and the question was one of such vital concern in the business affairs of the country, that it was deemed of great importance that the opinion of the Supreme Court be had upon it.

Were this the only case in which the question had

been passed upon by this court, whatever might be the force of Judge Hemphill's reasoning in his opinion, that case would not be certainly regarded as settling the law on the subject.

But as the question has arisen in numerous cases since, and this court has uniformly held the law as laid down in that case as settled by it, and reference has invariably been made to it as authority, it would scarcely now be proper to regard it otherwise than the very highest authority. In Lee v. Kingsbury, 13 Texas, 71, Judge Wheeler says : "That the husband, with the concurrence of the wife, may, in the forms prescribed by law, create a mortgage on the homestead, has been heretofore decided ;" and he refers directly to Sampson & Keene v. Williamson as the case in which it had been decided.

It may be proper to notice more closely and in a more extended manner than it has been done in a previous part of this opinion, the question so earnestly urged by counsel, whether a trustee or mortgagee, acting under a deed of trust or mortgage, with power in the trustee or mortgagee to sell the property without foreclosure, can sell in any case after the breach of the conditions of the mortgage, against the consent of the mortgagor at the time of the sale.

If the mortgagor objected to the sale before the sale is completed, does this objection revoke the power? Is the power revocable by the mortgagor at all? Can the power be revoked in any manner, or by any authority, short of a decree of a court of equity? Will a court of equity interpose to revoke the power while the conditions remain undischarged, simply because the mortgagor desires to recede from the contract? Will a court of equity in such a case override a rule as old as equity itself—"he who *seeks* equity must *do* equity?" And is this rule varied either with the class of persons or the character of prop-

erty involved? Does the rule vary because the mortgagor is a married woman, or the property is a homestead?

It is insisted that a mortgage, or deed of trust, to secure the payment of a debt, is not a *conveyance* in the sense in which that word is used in Article 1003, Paschal's Digest, and that therefore no estate, or interest in the property mortgaged, vests in the mortgagee or trustee, which he can convey.

Now, what is a mortgage or a deed of trust executed to secure the payment of a debt?

"A mortgage may be described as a conveyance of lands from a debtor to his creditor." (Bouvier's Law Dictionary.)

"A mortgage is a conveyance of an estate by way of a pledge for the security of a debt, and to become void upon the payment of it." (4 Kent, 138.)

"A mortgage is a conveyance of property, and passes it conditionally to the mortgagee." (U. S. v. Foster, 2 Cranch., 358.)

A mortgage is not only "a security for the debt, but it is something more. It is a transfer of the property itself as a security for the debt." (Conrad v. Atlantic Insurance Co., 1 Peters, 441.)

"A mortgage not only creates a lien, but operates to transfer to the mortgagee a qualified or conditional estate." (Porter v. Green, 4 Iowa.)

A mortgage is "a conveyance of the estate by way of pledge," etc. (1 Hilliard on Mortgage, 3.)

In Ewer v. Hobbs (5 Met., 3), Chief Justice Shaw said: "The first great object of a mortgage is" (as in this case) "to give to the mortgagee an effectual security, by pledge or hypothecation, of real estate, for the payment of the debt, or the performance of some other obligation. The next is to leave to the mortgagor, and to purchasers, creditors, and all others claiming derivatively through

him, the full and entire control, disposition and ownership of the estate, subject only to the first purpose—that of securing the mortgagee. Hence it is, that as between the mortgagor and the mortgagee, the mortgage is to be regarded as a conveyance in fee; because that construction best secures him in his remedy and his ultimate rights to the estate, and to its incidents, the rents and profits; but in all other respects, until foreclosure, when the mortgagee becomes the absolute owner, the mortgage is deemed to be a lien or charge, subject to which the estate may be conveyed, attached, and in other respects dealt with as the estate of the mortgagor; and all statutes on the subject are to be construed, and all the rules of law or in equity are to be applied, so as to carry these objects into effect."

Mr. Hilliard regards the opinion of Chief Justice Shaw, quoted from above, as settling the doctrine that, for the purposes of the security, the mortgage is to be regarded as a conveyance of the fee.

It appearing, therefore, from the foregoing reasoning and authorities, that a mortgage or a deed of trust is a "conveyance," in the sense in which that word is used in Article 1003, Paschal's Digest, it follows that a trustee is not precluded from the power to sell because of the want of title in himself sufficient to enable him to convey the fee in the land mortgaged to a purchaser.

In the early English decisions, when the practice was introduced of authorizing the mortgagee to sell the property for the payment of the debt, and which practice was introduced to avoid the difficulties and delays attending bills to foreclose, the validity of the power was questioned.

Lord Eldon declared that such a deed was of a very extraordinay kind—as it certainly was then, being of recent origin—and that there were clauses in it upon which it

would be very difficult to induce a court of equity to act. But still the practice grew, until it gained a substantial footing in the English courts, while in the States of the American Union the doubts of Lord Eldon seem never to have been entertained by the courts. (4 Kent, 146; Robertson v. Paul, 16 Texas, 474.)

That such a power is valid is now well established, not only by this court, but, so far as we can discover, by all the courts in this country and England.

The courts, and the profession generally, have regarded this doctrine as settled law, until quite a recent period. Unfortunately, we think, for the jurisprudence of the State, and for the security of the rights of property, and the good of society, the legal mind of the State has manifested, not only on this, but on other settled questions of law, a disposition, too much in accord with the general spirit of the times, to regard nothing as *settled;* everything as open to controversy. This court at least does not share in that disposition. If this were a new and unadjudicated question we would, if in doubt as to the correct rule, adopt that doctrine which, to our minds, presented the better and the sounder reason. This would be our only guide. But where a doubt should exist in a case which involves the overruling of the former settled decisions of this court, and a destruction of the rights of property to the extent of many millions of dollars, created by contracts entered into in accordance with the settled decisions of this court for nearly a quarter of a century, we would feel the duty imperative to give the former settlement of the law the benefit of the doubt.

We do not, however, entertain a doubt as to the soundness and correctness of the former decisions of this court on this subject. We believe the law on this subject was correctly settled in the first instance by our predecessors, and that there is *every* reason why the former decisions

should be maintained, and *none* that they should be overruled.

We therefore hold that this cause must be reversed, and the injunction dissolved, and the cause dismissed.

REVERSED AND DISMISSED.