THOMAS S. BLACK v. SARAH J. ROCKMORE.

1. HOMESTEAD—TRUST DEED AVOIDED BY DEATH OF HUSBAND.—
   The sale of a community homestead of an insolvent estate after the
   death of the husband, and after the wife had filed the bond, inventory,
   and appraisement required by the probate act of 1870, (Paschal's
   Dig., arts. 5494, 5497,) made under a deed of trust, with power of
   sale, executed by the husband and wife, does not vest title as against
   the homestead right of the widow.
2. VOID SALE OF TRUST PROPERTY.—A credit made on the note se-
   cured by such trust deed by such sale should be cancelled. The fail-
   ure of title under the sale gave the right to judgment for the origi-
   nal indebtedness in favor of the holder of the note.
3. VENDOR'S LIEN.—To the extent that a debt secured by such deed of
   trust was for the purchase-money, it can be enforced against the
   land, unless otherwise waived than would result from the execution
   of the deed of trust.

APPEAL from Panola. Tried below before the Hon. R. S. Walker.

The facts are fully given in the opinion.

*A. M. Carter*, for appellant. — The effect of our statute governing the settlement of the estates of decedents works a revocation of the power to sell contained in a mortgage or deed of trust, not that the power to sell dies of itself, or is extinguished or revoked upon the death of the constituents, but that effect is produced upon this power by our statute governing the settlement of such estates. The appellant insists that, under the laws in force and the facts of the case at bar, no such effect was produced upon the power given to him to sell. In the case of Robertson *v.* Paul the court say:

"Repeated decisions have settled that a mortgage is a 'claim for money' within the meaning of the statute, (art. 1156,) which must be presented to the administrator for allowance and to the chief justice for approval before it can be enforced. (Graham *v.* Vining, 1 Tex., 639; Danzey *v.* Swinney, 7 Tex., 625; 11 Tex., 94; 12 Tex., 43.) The mortgage or other evidence of the debt secured by it must be presented, 'accompanied by an affidavit, in writing, that the claim is just, and that all legal offsets, payments, and credits known to the affiant have been allowed,' before it can be allowed by the administrator or approved by the chief justice. (Art. 1158.) And it must be allowed and approved before payment can be required, or legally made by the administrator, otherwise than upon his own personal responsibility, in case there should not be assets sufficient to satisfy the preferred claims. After the mortgage has been 'allowed and approved, or established by suit,' the manner of proceeding to enforce it is prescribed by the statute. (Art. 1168.) Although it is a privileged claim, and has a preference over debts generally which are not secured by a lien, yet there are certain enumerated debts which have preference, by the statute, over debts secured by mortgage or other lien; as, funeral expenses, expenses of the last sickness, and expenses of administration, including the allowance to the widow and children; and the expenses incurred in the preservation, safe-keeping, and management of the estate. (Art. 1187.) These provisions of the statute, requiring the mortgage to be duly presented for allowance and approval, and giving the enumerated claims a preference in the order of payment, would be defeated if the mortgagee can proceed, as in this instance, to enforce it, under the power to sell, irrespective of the statute. That the mortgage contains a power to sell does not change its essential character. It is still a security, and nothing but a security, for the payment of a debt. The principal thing is the debt; the mortgage is but an incident. The debt remains as a demand against the estate, of the same and no higher

grade in consequence of the power contained in the mort-
gage. It comes within the letter and policy of the law,
which require the presentation of the claim, and which post-
pone its payment to other preferred claims. To permit its
enforcement otherwise than as the statute prescribes, would
be to defeat the express requirements and manifest policy of
the law." This case has been quoted and approved in Fort-
son *v.* Caldwell, 17 Tex., 627; Boggess *v.* Lilly, 18 Tex., 205;
Cunningham *v.* Taylor, 20 Tex., 129; McMiller *v.* Butler, 20
Tex., 406; Buchanan *v.* Monroe, 22 Tex., 542; Blair *v.* Thorp,
33 Tex., 49; Reeves *v.* Petty, 44 Tex., 254; and in no case
has the same been modified or enlarged, unless it be in the
case of Westbrooks *v.* Jeffers, 33 Tex., 87, and in this latter
case it cannot stand as establishing any doctrine inconsistent
with the doctrine enunciated in Robertson *v.* Paul, which
was based entirely on good sound principles; and any at-
tempt to change, alter, or modify this would be subversive
of the very best principles of our law.

The appellee filed an inventory and appraisement of the
community property of herself and husband, and gave bond
under the thirty-third and thirty-sixth sections of the act of
August 15, 1870. This was done on the 17th of February,
1873. Appellant's note did not become due until the 23d of
January, A. D. 1875. And then, if at all, his right to sell
the property by virtue of the deed of trust was complete.
The debt had not been paid; the time for payment had
arrived, and unless payment was made, or Black's power to
sell was in effect revoked by the then state of affairs, his
sale would pass the title. When Black's note became due,
the laws that were then being applied to the settlement of
the estate of J. J. Rockmore were to govern him in his
action with his "claim," and it cannot be said that the laws
referred to in the case of Robertson *v.* Paul would have any
applicability. The law did not "prescribe" the "manner"
of the proceeding to enforce the collection of this claim.
The courts had nothing to do with this estate. The admin-

istration, if such it can be called, was independent of the
Probate Court.   There were no preferred claims; no order
of the Probate Court necessary to sell land to pay debts, or
for any other purpose.   The surviving husband or wife could
sell and make a good title to the homestead, (Dawson v. Holt,
44 Tex., 174; Cordier v. Cage, 44 Tex., 532,) and the home-
stead formed no part of the estate, and was not subject to
administration.   (See act of August 15, 1870, sec. 26.)   In
Cordier v. Cage, 44 Tex., 532, the court say: "The appellee
having filed an inventory and appraisement of the commu-
nity property of herself and deceased husband in the District
Court of Panola county, she thereby rendered herself liable
to be sued upon the community debts, for which it was made
expressly liable; and, without any administration or further
action in the Probate Court, she had the right to manage,
control, and dispose of said community, real and personal,
in such manner as may have seemed best for the estate, and
of suing and being sued, with regard to same, in the same
manner as during the lifetime of her husband."   (Tucker v.
Brackett, 28 Tex., 338, 339.)   Or, in other words, upon filing
an inventory and appraisement of the community property
of herself and deceased husband, the estate stood in relation
to creditors as it did before the death of the husband.   If
the survivor was proceeded against, and judgment obtained
upon a community liability, an execution would issue to be
levied upon the community property.   (Id.)   Appellant, by
his deed of trust, had in it a judgment and execution; and a
party legally authorized to sell, and his power to sell not
being revoked in effect by our peculiar system governing
the settlement of the estates of decedents, Black's sale did
pass the title.   As to the question of vendor's lien, we think
that the fact of Black's taking a new note from the vendee,
in lieu of the original purchase-money note, even if the new
note did include other amounts, and even if he did take a
mortgage lien on the land, that still he did not lose the ven-
dor's lien.   (Carr v. Caldwell, 10 Cal., 380, and authorities

cited.)   A purchase-money mortgage will not extinguish the
lien.   (Anketel *v*. Converse, 17 Ohio, 11; Dodge *v*. Evans,
43 Miss., 570; Fonda *v*. Jones, 42 Miss., 792; Sanders *v*.
McAffee, 41 Ga., 684; Durette *v*. Briggs, 47 Mo., 356; Car-
rico *v*. Farmers' Bank, 33 Md., 235.)   Had Black taken per-
sonal security on the new note he would have lost his ven-
dor's lien, or had he taken any other thing for security than
the specific land he would have waived his vendor's lien.
(2 Story's Eq. Jur., sec. 1226; Pinchain *v*. Collard, 13 Tex.,
333.)   The true test is, Did the party holding the vendor's
lien agree to discharge the land?   If so, then the vendor's
lien is lost; but if he holds on to the land, then this evi-
dences the fact that he did not discharge the land as his
security, and the vendor's lien is not waived.

*B. M. Baker*, for appellee, cited and discussed Bicknell *v*.
Trickey, 34 Me., 273; 3 Long on Vendors, 623; Boss *v*. Ew-
ing, 17 Ohio St., 500; Wasson *v*. Davis, 34 Tex., 167; Rob-
ertson *v*. Paul, 16 Tex., 472; Blair *v*. Thorp, 33 Tex., 49;
Westbrooks *v*. Jeffers, 33 Tex., 88; Baxter *v*. Dear, 24 Tex.,
17; Stone *v*. Darnell, 20 Tex., 11; Ellis *v*. Singletary, 45
Tex., 27.

BONNER, ASSOCIATE JUSTICE.—This case decides that the
sale of a community homestead of an insolvent estate, after
the death of the husband and after the surviving wife had
filed the bond, inventory, and appraisement required by the
probate act of 15th August, 1870, (Paschal's Dig., arts. 5494–
5497,) made under a deed of trust, with power of sale, pre-
viously executed by the husband and wife, did not vest title
in the purchaser over the homestead right of the wife; and
also that, under the circumstances as disclosed by the plead-
ings and evidence, the credit for the amount of the bid at
such sale, which had been placed upon the indebtedness in-
tended to be secured by the deed of trust, should have been
cancelled, and judgment rendered for the plaintiff for the
amount of this indebtedness.

The evidence in the case, as developed under the pleadings, is, substantially, that on the 23d of January, 1872, the appellee, Sarah J. Rockmore, and her husband, J. J. Rockmore, since deceased, made, executed, and delivered to the appellant, Thomas S. Black, the promissory note mentioned in the pleadings for the sum of $365.23, due and payable three years thereafter; that the consideration of the note was this: one Daniels held a note for the sum of $124.50, given by J. J. Rockmore for part of the purchase-money of two hundred acres of land deeded to him by Daniels and his wife on the 21st of November, 1870; that on the day of the date of the first-named note of $365.23 appellant Black and Daniels were at the house of J. J. and Sarah J. Rockmore, when and where Black paid to Daniels the sum of $124.23 for this purchase-money note, and the same was delivered to Black; he added to the amount thereof a debt for about $200, then due to him by J. J. Rockmore, making the sum of $365.23, and prepared the above-mentioned note for this amount, which was then signed by J. J. and Sarah J. Rockmore, and the note for $124.50 given up to her; that at the same time they executed and properly acknowledged a deed of trust on the two hundred acres of land, with power of sale, to secure the payment of this note for $365.23; that in the year 1873, and before the maturity of the note, J. J. Rockmore departed this life; and on the 17th of February, 1873, thereafter, Sarah J. Rockmore filed in the proper court the bond, inventory, and appraisement under the above statute of August 15, 1870, which authorized her to control, manage, and dispose of the community property without the necessity of a regular administration. This inventory showed that the estate had but little, if anything, more than the property exempt from forced sale; that subsequently, on the 22d of March, 1875, the deed of trust was foreclosed as therein provided for, and appellant Black became the purchaser of the land at the sum of $400, and deed made to him as such; that the land, at the date of the deed of trust

and ever since, was the homestead of Sarah J. Rockmore and her children, they occupying it as such at the date of the institution of the suit. Appellant Black brought this suit against the appellee, Sarah J. Rockmore, and seeks to recover the title to the land and judgment for the remainder due on the note; and in the event that it should be held that he did not acquire a valid title by the sale, then that the credit of $400 be cancelled, and that he have judgment for the debt and enforcement of the vendor's lien.

Defendant claims that her homestead right is superior to the lien created by the deed of trust, and prays that the cloud upon her title by its foreclosure be removed, and that the deed to plaintiff under said proceedings be cancelled.

A jury was waived and the cause submitted to the court upon the questions of both law and fact together, and a general judgment was rendered for the defendant. Motion for a new trial was overruled. Plaintiff appealed, and made the following assignment of errors:

1. That the court erred in not rendering judgment for the plaintiff.

2. The court erred in not rendering judgment for plaintiff for the interest of Sarah J. Rockmore in the land sued for.

3. The court erred in not condemning the land, and in not decreeing the same to be sold to pay plaintiff the purchase-money of the land.

4. The court erred in giving judgment for defendant, when it should have been for plaintiff, in any event.

5. The court erred in overruling plaintiff's motion for new trial.

6. The court erred in not setting aside the credit of $400 he gave on the note of defendant, and in not giving plaintiff a judgment against defendant for the whole amount of the note, interest, and costs, and in not rendering a judgment for the plaintiff for the land in controversy.

The principal question in the case arises upon the legal effect of the death of J. J. Rockmore upon the subsequent

power to foreclose the deed of trust upon the homestead under the circumstances presented by the record.

Whatever might be the individual opinion of some members of the court as now composed, were this an original question, we consider the case of Robertson v. Paul, 16 Tex., 472, and which, in some of its features, is very analogous to the one now before the court, as conclusive against the exercise of such power, in case of an insolvent estate, at least, where there has been a regular administration. (McLane v. Paschal, 47 Tex., 370, and authorities cited.) In the case before the court there was not a regular administration, but the appellee qualified, as surviving wife, under the special provisions of the statute above referred to. Does the fact that she so qualified without a regular administration take this case out of the rule laid down in Robertson v. Paul, *supra*, and other cases approving it ?

As an abstract proposition, it would seem to accord fully with justice that both the husband and the wife and their estates should be bound by an express agreement, entered into with all the formalities of law, to make the homestead the security for an indebtedness created, perhaps, upon the very faith of this security. Such contracts, when coupled with power of sale by a trustee, have been repeatedly held valid, if executed in the lifetime of the husband. (Jordan v. Peak, 38 Tex., 429.)

As a limitation was placed upon the power to incumber the homestead, it is, perhaps, to be regretted that the distinction first intimated in the case of Sampson v. Williamson, 6 Tex., 102, has obtained, by subsequent decisions approving it, which discriminated against this power when sought to be enforced under the safeguards of judicial process, and in favor of it when executed by the unrestrained will of a trustee, who generally is the beneficiary in the trust. (Peterson v. Hornblower, 33 Cal., 266.)

The present Constitution of this State—whether wisely or not remains to be seen—has taken away the right to incum-

ber the homestead by deed of trust, with power of sale or otherwise, as security for debts other than for the purchase-money or improvements thereon, and to this extent may be considered as a legislative construction of the general policy of our State in this regard. (Const. of 1876, art. 16, sec. 50.)

The decision of Robertson v. Paul was based upon the ground not that the death of the mortgagor would of itself operate as a revocation of the power, but that its subsequent execution would be inconsistent with our statute regulating the settlement of estates of deceased persons. (Paschal's Dig., art. 1339.)

From the early days of the Republic to the present time Texas has been the refuge of the unfortunate of other countries. Her very existence as a government was conceived in her colonization laws. Her homestead and exemption laws, founded in wisdom and liberality, have ever been jealously guarded by her statesmen and jurists; and to this, doubtless, as much as to any other cause, we are indebted for our rapidly-increasing population and the development of our industrial resources. Although there is a proper medium which a wise statesmanship should respect in the passage of such laws, so that the rights of just creditors may be protected as well as those of unfortunate debtors, it cannot be said, where one contracts with a knowledge, either actual or constructive, of existing laws, and takes the risk of a contingency which may happen under them to his prejudice, that he can afterwards legally complain, although seeming abstract injustice may be done him. Such considerations, doubtless, entered into the deliberations of those eminent jurists who decided the case of Robertson v. Paul. The probate act of August 15, 1870, under which appellee in this case qualified, as surviving wife, has a similar section to that in the act of 1848 above referred to, and which controlled the decision in that case. (Paschal's Dig., art. 5674.) It also has a section to the effect that the exempt property forms no part of the estate. (Paschal's Dig., art. 5487.)

It is well known to those who are familiar with the practical operation of our community system, and our legislation and judicial decisions upon this interesting question, that while it worked well during the life of both the connubial partners, after the dissolution of the matrimonial partnership, by the death of one of them, in winding up the business it often involved the survivor in embarrassing difficulties and lawsuits. This was particularly the case where the deceased left a child or children. Unlike an ordinary partnership, it could not, as a general rule, be closed out by a sale of the assets, payment of the debts, and division of the remainder; for one of the great purposes of the partnership, and which has ever been fostered and encouraged by divine and human laws and an enlightened public policy,—the rearing of the common offspring,—often still remained to be accomplished. Perhaps the endearments of the bereaved home, obtained by the labor and toil of the deceased partner and parent, would in some cases forbid that it should be sold, while in other cases it would be to the manifest interest of the remaining family that it should be disposed of and a more profitable investment made. Under the terms of our marital laws, one-half the property, after the payment of debts, descended to the children, often minors, who were incapable of giving legal consent. This devolved upon the survivor the necessity of retaining the property, whatever might be the change of circumstances or the risks to himself and purchaser, in case of sale, of being called upon years afterwards, when, perhaps, his evidence is lost, to defend the title at the unjust suit of some ungrateful child or a speculating purchaser.

A regular administration would cause delay and expense, and frequently would not be adequate to the exigencies of the case. To obviate this, the statute under consideration and the previous act of August 26, 1856, were passed, not, as it is believed, to divest those who availed themselves of their privileges of any rights they had under the Constitution, laws, and settled policy of the State, but as a simple, inexpensive,

and efficacious mode to carry on and ultimately wind up the partnership, the rights of both creditors and heirs being protected by the required bond. The first act, of August 26, 1856, was a part of the marital act. The statutes under consideration and the one now in force were made parts of the probate act. Proceedings under them are in the nature of special administrations, carried on by independent executors, under statutory provisions, in wills taking the estates from the control of the Probate Court; and we do not perceive, upon principle, why a different rule should be applied to them from that laid down in Robertson *v.* Paul, and do not think the court erred in this construction.

In that case, however, as the mortgage, with power of sale, was given to secure the purchase-money, and as the merits of the case were fully before the court, although the sale made under the mortgage was set aside, the mortgage and claim secured by it were held to be valid and subsisting, and that they be certified to the Probate Court to be enforced.

That the homestead right is subordinate to the vendor's lien has been held in that and other cases, and has since been incorporated into our organic law. It has also been decided by this court that the mere fact that a new note was given for the purchase-money, or that it embraced other and different considerations, or that a mortgage or deed of trust was taken to secure the same, would not, of itself, necessarily defeat the vendor's lien as a conclusive presumption of law; but that they are questions of fact, to be decided from the circumstances of the particular case. (Swain *v.* Cato, 34 Tex., 395; Wasson *v.* Davis, 34 Tex., 159; Flanagan *v.* Cushman, 48 Tex., 241.) In the case of Swain *v.* Cato, *supra*, it was held, that when the note embraced other considerations than the purchase-money the vendor's lien could be enforced *pro tanto*.

As the case will be reversed on another ground, we think proper to make the above suggestions as to the vendor's lien, and particularly as some of the cases referred to have not yet

been reported, so that the plaintiff, if he can do so, on another trial, may bring himself, as to the amount of the purchase-money, within the rules therein laid down.

As the sale under the deed of trust is held to be void, and as the plaintiff, in making the same, seems to have acted in good faith and under an express power granted to him by J. J. and Sarah J. Rockmore, we think the court erred in not cancelling the credit of $400, the amount bid thereat, and in not rendering judgment for the plaintiff for the amount of the note. (Monroe *v.* Buchanan, 27 Tex., 241.) In the case of Pleasants *v.* Davidson, 34 Tex., 459, where an estate was administered by an independent executor without the control of the Probate Court, it was held not necessary to verify by affidavit a claim against the estate; and, further, that a creditor had the right to have his claim established whether there were assets in the hands of an executor or not, for the reason that he might subsequently have sufficient assets to satisfy all demands, and especially such as may have been kept alive by judgment. We think the reason of that case applicable to the character of case now before the court.

The judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.