SAMUEL G. SMITH, Appellant, *v.* NICHOLAS MARC, Appellee.

APPEAL FROM LA SALLE.

Prior to the amendatory act of 1857, the homestead might be sold under a power of sale in a mortgage.

The homestead is protected from a forced sale by judicial process, but not from any other kind of sale. A formal release or waiver is necessary to subject it to a forced sale.

THIS was an action of ejectment, commenced by appellee against appellant, to recover the possession of lots one, two, three, four, seven and eight, in block sixty-four, Ninawa Addition to city of Peru, at the February term, A. D. 1861. By consent of parties a jury was waived, and the cause submitted to the court for trial, upon the declaration (which is in the usual form), and the plea of general issue.

The plaintiff offered in evidence a certain indenture of mortgage, in the words and figures following:

" This Indenture, Made this second day of March, A. D. 1853, by and between Samuel G. Smith and Mary A. Smith, of the city of Peru, in the State of Illinois, parties of the first part, and Alexander Cruikshank, of said city of Peru, party of the second part, witnesseth, That the parties of the first part, for and in consideration of the sum of fifteen hundred dollars, received to their full satisfaction, of the said Alexander Cruikshank, the receipt of which is hereby acknowledged, do hereby give, grant, bargain and sell to the said Alexander Cruikshank, and his heirs and assigns, forever, the following described real estate, situate in the county of La Salle and State of Illinois, and known as lots one, two, three, four, seven and eight, in block sixty-four, (1, 2, 3, 4, 7, and 8, block 64), and the west half of lot ten, in block one hundred and fifty-one, (W. ½ lot 10, block 151), all in the town plat of Ninawa, otherwise known as the Ninawa Addition to the town of Peru. To have and to hold the same to the said Alexander Cruikshank, and to his heirs and assigns, in trust, as hereinafter expressed, that is to say : Whereas, the said Samuel G. Smith is now indebted to the said Alexander Cruikshank for advances and discounts of money to the said Samuel by the said Alexander ; and whereas it is contemplated by the parties that the said Alexander Cruikshank may hereafter, and for such length of time as may be agreeable to both parties, and from time to time, at such times as may be mutually convenient and desirable, make loans of money to said Smith, or advancements for his account upon the checks, notes, drafts or other evidences of in-

debtedness of said Smith, whether as maker, acceptor, drawer or indorser, for such sums as may be mutually agreed upon, but the whole sum so loaned or advanced and remaining unpaid at any one time, not to exceed fifteen hundred dollars, upon the faith of the security hereby created. Now, therefore, if any of the indebtedness now existing as aforesaid, or any of the indebtedness that may be hereafter contracted by the said Smith to the said Cruikshank as hereinbefore contemplated, or any part of such indebtedness, shall become due, and be unpaid and remain due and unpaid for the period of sixty days, the said Alexander Cruikshank, his heirs or assigns, may, at any time thereafter, whilst any such indebtedness remains due and unpaid, at his or their own option, sell said real estate, or any part thereof, at public sale to the highest bidder for cash, at the office of said Cruikshank or other public place in the city of Peru, he or they first giving twenty days' public notice of the time and place of such sale by publication in a newspaper of said city. And upon such sale, the said Cruikshank, or his representatives, shall make, execute and deliver to the purchaser a good and sufficient deed or deeds of conveyance of the property so sold, and which deed or deeds shall operate as a full and complete conveyance of the premises, so that neither of the parties of the first part, or any other persons claiming by, through, or under them or either of them, (except under this conveyance), shall have any right, title or interest, legal or equitable therein. And the moneys arising from such sale shall be applied, first, in payment of all reasonable expenses and charges arising in the premises; second, upon the indebtedness of said Samuel G. Smith, as hereinbefore contemplated, to said Cruikshank, until the whole of such indebtedness, with interest and costs, be fully satisfied; and lastly, to pay over to the said Samuel G. Smith, or his proper representatives, any remaining proceeds of such sale. It is expressly understood and agreed, that at any such sale the said Alexander Cruikshank, or any other person or persons in his behalf, may become the purchaser, if the highest bidder. It is further agreed and promised that at any time hereafter when the said Samuel G. Smith, or his representatives, shall have fully paid up all indebtedness now existing or hereafter created, as hereinbefore mentioned or contemplated, with interest, and all reasonable costs and charges in the premises, then and upon his so doing, he or his representatives, at his or their option, shall be entitled to demand and receive, at his or their proper costs or charges, a deed of release from the said Alexander Cruikshank, or his heirs or assigns, free from any incumbrance created by said Cruikshank, or those claiming under him. And the said parties of the first part, for

themselves, their heirs, executors, administrators and assigns, do hereby covenant to and with the said party of the second part, his heirs, executors, administrators and assigns, that they are well seized of the premises above conveyed, as of a good and indefeasible estate, in fee simple; that said premises are free from all incumbrance except a mortgage upon said lots in block sixty-four to John Carle & Co., for six hundred dollars, and upon said west half of lot 10, block 151, to the trustees of schools for town 33 north, range 1 east of third principal meridian, for nine hundred and thirty-five dollars, and that they will forever warrant and defend said premises against all lawful claims and demands whatsoever. In witness whereof, the said parties of the first part have hereunto set their hands and seals, the day and year first above written ; interlineations authorizing heirs and assigns to sell and convey, made before signing.

S. G. SMITH. [SEAL.]<br>M. A. SMITH. [SEAL.]

STATE OF ILLINOIS, } ss.
LA SALLE COUNTY.

On this 2nd day of March, 1853, before the undersigned authority, personally appeared Samuel G. Smith, to me personally known to be the person whose name is subscribed to the above deed, as having executed the same, and acknowledged that he had freely executed the same, for the uses and purposes therein expressed. And Mary A. Smith, wife of the said Samuel G. Smith, to me personally known to be the person whose name is subscribed to the same deed, appeared before me, and was by me made acquainted with the contents of the same, and examined separate and apart from her said husband, whether she executed the said deed, and relinquished her dower to the lands and tenements therein mentioned, voluntarily, freely, and without compulsion of her said husband, and acknowledged that she executed the same, and relinquished her dower in the lands and tenements therein mentioned, voluntarily, freely, and without the compulsion of her said husband.

WARREN BROWN, [SEAL.]<br>Justice of the Peace.

The defendant, by his attorney, objected to the introduction of said indenture, upon the ground that it was signed by S. G. Smith, and not by the defendant, Samuel G. Smith. The court overruled the objection, and permitted said indenture to be read in evidence ; and the defendant duly excepted.

Plaintiff then called *William Chumasero*, who testified: As attorney for Cruikshank, he did, on December 15th, 1859, at 11 o'clock A. M., at the south door of the city hall, in the city of Peru, sell the real estate described in said mortgage, to Nicholas Marc, he being the highest and best bidder therefor,

for $693.93 ; that lot 1 sold for $99.98 ; lots 2 and 3, for $150 each ; lots 4 and 7, for $99.98 each ; and lot 8, for $99.99 ; said lots were sold separately ; some other persons were present at sale ; not certain whether any one bid but Marc ; the indebtedness due on said mortgage at the time of sale, consisted of notes and checks, and were in my hands for collection ; the amount the lots sold for, embraces costs of advertising and attorney's fees, and all expenses attending the sale. Before the sale I called on Smith ; told him I had been instructed by Cruikshank to advertise and sell upon said mortgage ; showed him the notes and insurance receipt which Cruikshank held against him, and to collect which I had been instructed to sell under the mortgage. Smith admitted said notes, check and insurance receipt to be correct ; and that they were advances made upon said mortgage by Cruikshank to him (Smith). Here witness was shown said notes and checks, which he identified. Defendant objected to witness stating his conclusion as to what Smith admitted, but that he should give the language or substance thereof used by Smith. Witness then repeated that he could not give Smith's language from recollection, but that he admitted that the notes, etc., were correct, and were advances made by Cruikshank to him under said mortgage.

Plaintiff then offered in evidence notice of the sale of said premises, to which defendant objected, on the ground that there was a variance between the description of the lands described in the mortgage and in the notice ; the court overruled the objection, and defendant excepted. The notice was then put in proof.

### MORTGAGE SALE.

Whereas, Samuel G. Smith, and Mary A. Smith, his wife, did, on the 2nd day of March, A. D. 1853, execute under their hands and seals, and deliver to the undersigned, Alexander Cruikshank, a certain mortgage deed, with power to make sale of the following described property, viz. : lots numbers one (1), two (2), three (3), four (4), seven (7) and eight (8), in block number sixty-four (64), in the Ninawa Addition to the town (now city) of Peru, in the county of La Salle and State of Illinois, which said mortgage was filed for record in the recorder's office of La Salle county, on the 7th day of March, A. D. 1853, and recorded in book 32, page 16, and which said mortgage was executed as aforesaid, to secure the payment of certain sums of money at that time due and owing, from said S. G. Smith, to said Alexander Cruikshank, and such indebtedness as might be thereafter contracted by said Smith to said Cruikshank, for advances and discounts of money, etc., to be thereafter made by said Cruikshank to said Smith, and on which is now due and owing the

11

sum of about six hundred and sixty dollars of principal and interest; and whereas, default has been made in the payment thereof, by the said S. G. Smith, and the same still remaining due and unpaid.  Now therefore, by virtue of the power in said mortgage contained, I shall proceed to sell the said premises above described, with all right, interest or claim whatsoever, in law or equity, of the said Samuel G. Smith, and Mary A., his wife, in and to the same, at public auction, at the south door of the city hall, in the city of Peru aforesaid, on the 15th day of December, A. D. 1859, between the hours of 10 o'clock A. M., and 4 o'clock P. M., to the highest and best bidder for cash, for the purpose in said mortgage deed expressed.

Dated, *Peru, Nov. 10th,* 1859.           ALEX. CRUIKSHANK,
                                                      *Mortgagee.*

To this notice, the printer's certificate of publication is attached.

The defendant waived all objection that the testimony of the publisher was not offered in place of his certificate.

Plaintiff offered in evidence the notes, checks, insurance receipt, identified as aforesaid, by witness Chumasero, to which defendant objected, on the ground partially, that there was not sufficient evidence that the consideration of said notes, etc., were advances made upon said mortgage, and that such advances could not be proven by parol.  The court overruled the objection, and defendant excepted.

Chumasero further testified: he was acquainted with the handwriting of Alexander Cruikshank; that the signature to the deed now shown him, was in said Cruikshank's handwriting; said deed was signed in witness' presence.  Plaintiff then offered in evidence said deed from Cruikshank to Marc; defendant objected, for the reason that there was no proof of the delivery of the same to plaintiff; the court overruled the objection, and permitted the deed to be read in evidence, and defendant excepted.

It was admitted that defendant was owner in fee simple of the lots in controversy at date of mortgage offered in evidence.

The court found the issue joined for the plaintiff, whereupon defendant moved for a new trial, which motion was overruled by the court, and defendant excepted, and final judgment was entered for plaintiff.

The errors assigned are as follows:

The court erred in permitting the indenture of mortgage to be read in evidence.

The court erred in permitting the "notice of sale" to be read in evidence.

The court erred in permitting the notes, checks and insurance receipt, and each of them, to be read in evidence.

The court erred in permitting the deed from Cruikshank to Marc to be read in evidence.

The court erred in finding the issues joined for the plaintiff, when the same should have been found for the defendant.

The court erred in overruling the motion for a new trial.

The court erred in entering judgment for plaintiff, the proof showing that defendant was entitled to hold the same as a homestead, under the Homestead Act, as against the claim of the plaintiff.

The court erred in deciding that defendant could not claim the premises in controversy as a homestead, under the Homestead Act.

The judgment of the court below is against law and evidence.

C. AND M. BLANCHARD, for Appellant.

G. S. ELDREDGE, for Appellee.

BREESE, J. The appellant's counsel argues very ingeniously, that the object and design of the Homestead Act was to prescribe a mode by which the homestead could be alienated, and at the same time, in effect to declare all attempts at alienation invalid, unless they conform to that mode. He cites the amendatory act of 1857, as expressive of the intention of the legislature as to the objects and requirements of the Homestead Act, as it was originally passed. That amendment is as follows : The first section of an act to exempt homesteads from sale or execution, approved February 11th, 1851, be amended by inserting after the words " subscribed by such householder," the words " and his wife, if he have one," it being the object of this act to require, in all cases, the signature and acknowledgment of the wife, as conditions to the alienation of the husband. (Scates' Comp. 577.)

This amendatory act was passed February 17th, 1857, and however it may affect conveyances executed after its passage, it cannot affect those made prior thereto.

The cases referred to by the appellant, were cases of forced sales by order of court, and came directly within the provisions of the act of 1851, hence the court said, in the case of *Kitchell*, 21 Ill. 40, that it must appear that the privileges and advantages of the act, were in the contemplation of the parties executing the deed, and that those advantages were expressly released or waived in the mode pointed out in the statute. And in the case of *Vanzant*, 23 ib. 536, that the insertion in the

deed of conveyance, of the special or general covenants, without express reference in the deed to the Homestead Act, could not operate as a release or waiver.

It is asked, if those mortgages had contained a power of sale by the mortgagee, would that have made them valid alienations of the homestead? We answer, that the object of the law, before the act of 1857, was to declare simply, that if a mortgage did not contain an express release or waiver of the advantages of the Homestead Act, the premises, if a homestead, could not be levied upon and sold on execution by forced sale, under any order or process from any court of law or equity. Prior to the amendatory act of 1857, there was no prohibition whatever upon the voluntary alienation of the homestead, but simply, an exemption of it, from a levy and forced sale under judicial process, and parties were not to be deemed as having waived this right of exemption, except in the mode prescribed by the act.

The amendatory act, has, perhaps, a broader scope and signification. When a case under that law comes before us, we will endeavor to dispose of it, by a fair application of it, as we may understand it, to the facts which may be shown.

A case from Texas has been cited, *Sampson* v. *Williams*, (6 Texas, 109). We have not the case before us, nor the laws of Texas, but understand from the brief in this cause, that the homestead is secured in that State, by a constitutional provision which is not quoted in the brief. We cannot therefore say that the case cited is applicable.

The legislature, it seems to us, had in view solely, the protection of the homestead from a forced sale by judicial process, but from no other kind of sale. A formal release or waiver is made necessary to subject it to a forced sale. See the case of *Ely* v. *Eastwood, ante,* 107, decided at this term.

The judgment is affirmed.                    *Judgment affirmed.*