JUDGE-PRYOR
delivered the opinion op the court.
E. N. Casey and Mary Judy made a joint purchase of a house and lot in the town of Walton for the sum of two thousand dollars, all of which ivas paid in hand except the sum of five hundred and twenty-three dollars, and for this amount Casey executed, to the vendor, Edwards, his individual note, the deed made for the property retaining a lien to secure its payment. The note was sold by Edwards to Hind, and the latter afterward surrendered the note to Casey, and took in lieu thereof Casey’s note, with Mary Judy as surety.
Hind, holding Casey’s individual note for two hundred dollars, instituted an action thereon, obtaining a judgment, upon which an execution issued, and was levied on Casey’s interest in the house and lot. This interest was sold by the sheriff and purchased by Hind. The return on the execution shows that it was sold subject to the lien supposed to exist for the purchase-money, viz., the note executed by Casey and Mary Judy to Hind in lieu of the original note to Edwards.
After this execution had been levied a mortgage was executed by Casey and wife to the appellants, Gaines and Lampton, on their homestead interest in this house and lot, to secure the payment of a bill of exchange for which the *94 appellants were liable as indorsers for Casey, amounting to eight hundred dollars. The language of, the mortgage is “the interest conveyed by this mortgage being the homestead interest of the said Casey in the following described real estate, etc.”
- Roberts, who had obtained a judgment against Casey and the appellee Snow on a note executed by Casey as principal with Snow, as surety, had the equity of redemption of Casey in the house and lot levied on to satisfy this debt, and the same was purchased by Snow, who afterward paid off the execution to Hind under which the first sale had been made, and obtained a deed from the sheriff for the property. The house and lot were afterward adjudged to be sold, on the petition of Judy’s heirs, for the reason that it was indivisible; and the parties interested not questioning the validity of this last judgment, the court below was called on to determine the rights of the creditors of Casey in the distribution of that portion of the proceeds of sale to which the latter or his creditors are entitled in the event the fund is insufficient to pay all the debts.
It is clear that Hind’s acceptance of the note of Casey with surety released the lien on the land, although there might have been a verbal agreement at the time by which this lien was to be retained. The lien, by the express provisions of the statute, must be retained in the deed, and no verbal agreement or writing evidencing its existence can operate to the prejudice or affect the rights of third parties.
Prior to the adoption of the Revised Statutes the vendor of land taking. personal security for the consideration waived his equitable lien. (Ducker & Jones v. Gray, 3 J. J. Marsh. 163.) Nor could Hind revive the lien that had been extinguished by purchasing the property under an execution subject to what he then supposed was a lien on the house and lot. The levy of this execution created a lien on the property *95 for the debt embraced by it, and no more; and Snow, having paid it off to Hind, must be substituted to his rights. The execution in favor of Roberts created no lien on the house and lot, for the reason that it was levied on the equity of redemption only, when this right of redemption did not exist; and if there had been any valid subsisting liens on this property for the purchase-money or created by mortgage, the party purchasing subject to these liens or his assignee only acquired a lien for his purchase-money and ten per cent interest, as provided by the statute, to be enforced by an equitable proceeding.
The creditors, however, are all in a court of equity, and the mode of distributing the proceeds of sale must be determined with reference to the priority of liens. The appellants, Gaines and Lampton, insist that their mortgage upon the homestead exemption gives them the priority. The judgments in favor of Hind and Roberts were rendered on liabilities created long before the passage of the homestead law, and therefore the whole property was subject to the payment of their debts, unless the execution of the mortgage had the effect to postpone the payment of their debts until the mortgage debt is satisfied.
There is no doubt but what Casey had the power to mortgage his legal estate in the property to secure an indebtedness created prior or subsequent to the enactment of the homestead law; and such a mortgage, made in good faith and properly recorded, can not be successfully assailed by either subsequent or antecedent creditors. There is no conveyance in this case of the legal estate, but the homestead exemption only, and by the express language of the homestead act the debtor is not permitted to retain this beneficial interest in his realty against a debt created prior to its enactment. The right to a homestead did not exist as against the claims of Hind and Roberts upon which these judgments had been obtained, and the entire interest of Casey in the property was subject to the payment of each. *96 The debtor, not being entitled to the homestead as against these creditors, could not vest the mortgagees with any greater right than he himself had.
The right to a homestead may be waived by a sale of the property, or may be mortgaged, as in. this case, so as to deprive the debtor of the right of exemption as against the debt it was intended to secure. This right to the exemption must terminate, although mortgaged, whenever the debtor ceases to be a housekeeper or removes from the premises, and never had an existence as against liabilities incurred prior to the passage of the law. The mortgage therefore passed no equitable interest to the mortgagees affecting the claims of the appellants.
These mortgagees are the only parties complaining of the judgment, and the judgment of the chancellor, being in accordance with this opinion as to them, must be affirmed.