# CHARLESTON.

## MORAN *v.* CLARK.

Submitted September 8, 1887.—Decided November 12, 1887.

1. HOMESTEAD—CONSTITUTIONAL POWER—POWER OF LEGISLATURE.

The people in their Constitution, as far as future debts may affect it, have the right to provide for any sort of a *homestead*,

guarded as they please; subject to or without restrictions; to prohibit the owner of the homestead from incumbering it, or to permit it to be done; and, unrestricted by the Constitution, the Legislature has the same power. (p. 376.)

2. HOMESTEAD—CONVEYANCE OF.

Where there is neither constitutional nor statutory prohibition, as incident to the right of ownership, the owner of the homestead may sell or incumber it; and such sale or incumbrance will be as valid as if the property had not been set apart as a homestead. (p. 368, 376.)

3. HOMESTEAD—CONVEYANCE OF—EXEMPTION FROM FORCED SALE.

The sale of a homestead under a deed of trust, or under a decree of foreclosure of mortgage thereon, is not a " forced sale," within the meaning of the Constitution, which exempts a homestead from a " forced sale. " (p. 373, 377.)

4. HOMESTEAD—CONVEYANCE OF—DEED OF TRUST.

Under the Constitution of this State, and Acts 1872–73, ch. 193, the owner of the homestead set apart under the statute may execute a valid deed of trust on such homestead. (p. 378.)

5. JUDICIAL SALES—CONFIRMATION BY COURT.

It is difficult to lay down a general rule as to when a court will or will not refuse to confirm a judicial sale, as its exercise of discretion in this matter must in a great measure depend upon the circumstances of each case. (p. 380.)

6. JUDICIAL SALES—CONFIRMATION—INADEQUACY OF PRICE.

Where there had been two sales of real property,—one under a deed of trust, and the other at a judicial sale,—made not far from each other in point of time, both sales at $2,000.00, and affidavits were filed, stating that the property was worth, at the time affidavits were taken, from $3,000.00 to $3,500.00, and " affiants believed that in the *near future* said property could be sold for an advance of from $500.00 to $1,000.00 over the price of $2,000.00 for which it sold, and another affidavit showed it sold for a fair price, this Court refused, on the mere ground of inadequacy, to set aside the sale. (p. 381.)

7. APPEAL—HARMLESS ERROR.

The appellate court will not reverse a decree unless it is to the prejudice of the appellant. (p. 381.)

*G. E. Price and F. M. Reynolds* for appellant.

*W. C. Clayton and C. W. Dailey* for appellee.

JOHNSON, PRESIDENT :

On the first day of December, 1874, Henry G. Davis and others conveyed to Cornelius Moran lots Nos. 169 and 170 in

the town of Keyser for the sum of $752.50. In the *habendum* clause in the deed is the following language: "To have and to hold the said lots, with all the appurtenances, unto said C. Moran and his heirs forever, as and for a homestead, exempt from forced sale, according to the provisions of chapter 193 of the Acts of the Legislature of West Virginia, session of 1872–3." A lien was expressly reserved for $557.50 of the purchase-money. The following paper was executed on the same day by Cornelius Moran, duly acknowledged on the sixteenth day of December, 1874, and recorded on the twenty eighth day of the said month, 1874: "Whereas, Henry G. Davis and Kate A., his wife, Thomas B. Davis, and William R. Davis and Mary H., his wife, have this day conveyed unto Cornelius Moran two certain lots in the town of Keyser, Mineral county, West Virginia, by deed bearing even date herewith, for the consideration of $752.50, and the said Cornelius Moran desires the benefit of a homestead in said lots, therefore this writing witnesseth that the said Cornelius Moran intends to set apart as and for a homestead exempt from forced sale, under and according to the provisions of chapter 193 of the Acts of the Legislature of West Virginia, session of 1872–73," [here follows a description of the lots.]"

On April 2, 1880, Cornelius Moran and Bridget, his wife, executed to W. C. Clayton, trustee, a deed of trust on said homestead property, together with all the household and kitchen furniture, and all the hotel, bar, and ten-pin alley fixtures in the house, to secure a large amount of debts. This deed was properly acknowledged by Moran and wife on the third day of April, 1880, and the same day admitted to record. This deed was by its own terms "subject to the homestead, as this clause shows;" "but the lots in Keyser above conveyed are subject to the homestead right of C. Moran to the amount of $1,000.00 as shown by his declaration of homestead, duly recorded," etc.

On December 27, 1881, Moran and wife executed another deed of trust to the same trustee, conveying the homestead lots, to secure the debt of the defendants Clark and Boyd; amounting then to $1,000.00. In this deed, we find the following, in the granting clause, after describing the two lots: "Together with all the buildings, fences, and other improve-

ments thereon, and all the appurtenances thereunto belonging; *expressly waiving all rights of homestead*, and granting and conveying said lots and appurtenances free from any and all rights, reservations, claims, and demands of the said parties of the first part." This deed was properly acknowledged by Moran and wife on the twenty eighth day of December, 1881, and on the fourteenth January, 1882, admitted to record.

On May 10, 1883, the said Moran and wife executed still another deed of trust on said homestead lots and appurtenances to W. C. Clayton, trustee, to secure the payment of a note of $1,000.00 payable to James Clark & Co. This deed contains the following: "And the homestead right, to the amount of $1,000.00, set apart by the said C. Moran by his declaration of homestead, recorded in said county of Mineral, in deed book 5, page 190, is hereby waived and set aside, so that this conveyance is wholly free therefrom." This deed was properly acknowledged by Moran and wife on the tenth May, 1883, and on the same day admitted to record.

The trustee, Clayton, advertised and sold the property, and Cornelius Moran filed his bill in the Circuit Court of Mineral county at June rules, 1885, in which he set up the foregoing facts, and insisted that he could not incumber and waive his homestead, and also that said property was sold for an inadequate price, and was purchased by the defendant and James Clark. He alleges, also, other reasons for setting aside the deed, and prayed that the court would declare his right to a homestead of $1,000.00 in value in said property, and that the deed be set aside, and declared null and void; and, if the court deemed it necessary, that under its decree the property might be sold, and his homestead preserved to him; and for general relief. Answers were filed by Clayton, the trustee, also by defendants Boyd and James Clark, insisting that the sale was proper, and that the homestead was waived by both Moran and wife in the said deeds of trust.

On the twentieth of January, 1886, the court decided that Cornelius Moran had the right by deed of trust, in which his wife united, to convey his right of homestead in the said property, and that the homestead, by said deed, passed to the trustee, and that the court could not set aside the deed,

on the ground that the property had theretofore been set apart as a homestead; and, as to the other grounds, the cause was continued. On the third day of May, 1886, by another decree, the deed was set aside and annulled, the defendant and grantee Clark agreeing that it should be set aside; and the court ordered the property to be sold free from any right of homestead in the said Moran. The property was sold by the commissioners appointed by said decree to said Clark, for the price of $2,000.00, the same for which it had sold under the trust-deed. The defendant excepted to the confirmation of the sale, on the ground of inadequacy of price, and, in support of his exception, filed the joint affidavit of 11 persons, who say that they are acquainted with the property, and, in their opinion the property was worth from $3,000.00 to $3,500.00; " that property in Keyser is beginning to advance in price, in consequence of the building of the new Piedmont & Cumberland Railroad, and affiants believe that in the near future said property can be sold for an advance of from $500.00 to $1,000.00 over the price at which it was sold to James Clark." Three of the affiants value the property at $3,000.00. The affidavit of J. H. Markwood shows that affiant believed that $2,000.00 was a fair price for the property.

On September 18, 1886, the court entered a final decree in the cause, in which the affidavits were considered, and in open court James Clark offered to increase his bid to $2,500.00, after the court had indicated that in its opinion the price was low. Clark's offer was accepted, and the sale confirmed to him at $2,500.00. Moran thereupon moved the court to set aside out of said purchase-money $1,000.00 as his claim of homestead in said property, to be disposed of or invested for his benefit in such way as the court might direct; which motion the court refused to grant, and proceeded to order the proceeds of the sale to be distributed, and further ordered that " if the plaintiff, or some one for him, shall, within twenty days from this date, give to said special commissioner a bond with good security in the penalty of $200.00, with condition that on a resale of said property it shall sell for $2,750.00, or the parties to the said bond will pay the sum of $200.00, then the said commissioner shall resell the said property on the same

terms and after the same advertisement as before, otherwise, the said sale shall stand confirmed."

From the decrees of the twentieth of January, 1886, and the eighteenth of September, 1886, the plaintiff Moran appealed. Appeal granted on November 6, 1886.

The principal question to be decided in this cause is whether the deeds of trusts from Moran and wife, conveying the property set apart as a homestead, are valid. It is insisted, by counsel for appellant, that said deeds are void; that they had no right, and were not authorized, to so incumber the homestead. They undoubtedly had the right, as we shall see, to thus create liens on the homestead, unless prohibited by the Constitution, or statute made in pursuance of the Constitution. It is a rule that exemption laws are to be construed favorably towards the debtor, to advance the object of the Constitution and statute in their favor. *Kimpton* v. *Bronson*, 45 Barb. 632; *Becker* v. *Becker*, 47 Barb. 499. The law seems to be well settled that a waiver of a debtor's right to claim personal property as exempt from execution, when attempted to be made by an executory contract, is ineffectual, and will not be enforced. Therefore a clause added to a promissory note "waiving the benefit of all exemption laws" is contrary to public policy, and void. *Kneettle* v. *Newcomb*, 22 N. Y. 249, 78 Amer. Dec. 186; *Recht* v. *Kelly*, 82 Ill. 147; *Carter's Adm'r* v. *Carter*, 20 Fla. 558; *Branch* v. *Tomlinson*, 77 N. C. 388; *Curtis* v. *O'Brien*, 20 Iowa 376; *Maxwell* v. *Reed*, 7 Wis. 582; *Blalock* v. *Elliott*, 59 Ga. 837; *Denny* v. *White*, 2 Cold. 284; *Phelps* v. *Phelps*, 72 Ill. 545; *Moxley* v. *Ragan*, 10 Bush 156.

In *Kneettle* v. *Newcomb*, 22 N. Y. 249, Denio, judge, said: " I am of opinion that a person contracting a debt can not agree with the creditor that in case of non-payment he shall be entitled to levy his execution on property exempt from levy by the general laws of the State. The statutes which allow a debtor, being a householder, and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would be frustrated if an agreement like that contained in these notes, entered into in connection with the principal "

contract, could be sustained. A few words contained in any note or obligation would operate to change the law between these parties, and so far disappoint the intentions of the Legislature. If effect shall be given to such provisions, it is likely that they will be generally inserted in obligations for small demands, and in that way the policy of the law will be completely overthrown. Every honest man who contracts a debt expects to pay it, and believes he will be able to do so, without having his property sold on execution. No one worthy to be trusted would therefore be apt to object to a clause subjecting all his property to levy on execution in case of non-payment. It was against the consequences of this over-confidence, and the readiness of men to make contracts, which may deprive them and their families of articles indispensable to their comfort, that the Legislature has undertaken to interfere. * * * One may turn out his last cow on execution, or may release an equity of redemption, and he will be bound by the act. In thus discriminating, the law takes notice of the readiness with which sanguine and incautious men will make improvident contracts, which look to the future for their consummation, when, if the results were to be presently realized, they would not enter into them at all. If, with the consequences immediately before them, they will do the act, they will not generally be allowed to retract; it being supposed, in such cases that valid reasons for the transaction may have existed, and that, at all events, the party was not under the influence of the illusion which distance of time creates. Ordinarily, men are held to their executory as well as their executed contracts; but in a few exceptional cases, where the temptation is great, or the consequences peculiarly inconvenient, parties are not allowed to make valid prospective agreements."

In *Carter's Adm'r* v. *Carter*, 20 Fla. 569, the Court, by Randall. C. J., said: "We have been unable to find in reports, text-books, or digests that it has been held anywhere, except in Pennsylvania, that a written agreement, contained in a note, to waive the right to claim an exemption of personal property from levy and sale to satisfy a judgment rendered on the note, has been sustained; and even in that

State the Court has expressed regret that a contract of that kind has ever been sustained, and that such a rule had become established as a law by the repetition of a bad precedent. True, a man may sell his personal property, or may pledge or mortgage it, but in that case the property sold or pledged is designated and identified, and a special interest is created in favor of a creditor in the particular article pledged or mortgaged; and in no State is this power of the owner of personalty denied." He says, further, that "the object of exemption laws is to protect people of limited means, and their families, in the enjoyment of so much property as may be necessary to prevent absolute pauperism and want, and against the consequences of ill-advised promises, which their lack of judgment and discretion may have led them to make, or which they may have been induced to enter into by the persuasion of others. * * * When a man executes a mortgage or bill of sale upon certain specified property, the very nature of the transaction implies the exercise of discretion, and the contemplation of inevitable consequences. Such contracts are therefore upheld, as well in respect to real as to personal property."

In *Recht* v. *Keily*, 82 Ill. 147, the Court said, after citing a number of authorities: "The principle of the cases is that the exemption created by the statute is as much for the benefit of the family of the debtor as for himself, and for that reason he can not, by an executory contract, waive the provisions made by law for their support and maintenance. Such contracts contravene the policy of the law, and hence are inoperative and void. The owner may, if he choose, sell or otherwise dispose of any property he may have, however much his family may need it; but the law will not aid him in that regard, or permit him to contract in advance that his creditors may use the process of the courts to deprive his family of its benefit and use, when an exemption has been created in his favor. Laws enacted from considerations of public concern, and to subserve the general welfare, can not be abrogated by mere private agreement."

In *Reed* v. *Bank*, 29 Gratt. 719, it was held that the act (Code 1873, ch. 183, § 3,) which authorizes the waiver of the homestead exemption is not in conflict with the eleventh

article of the Constitution of the State; and if a party, executing his bond or note, waives his homestead exemption as to the bond or note, neither he nor his wife can set up said homestead exemption as against the said bond or note. The statute under which this decision was made declared that in " all cases where a debtor or contractor shall declare, in the body of the bond, note, or other evidence of the debt or contract, that he waives, as to such debt or contract, the exemption from liability of the property which he may be entitled to hold exempt under the provisions of this act, the property, whether previously set apart or not, shall then be liable to be subjected for such debt or contract under legal process in like manner, and to the same extent, as other estate of said debtor and contractor. * * * The following or equivalent words shall be sufficient to operate as a waiver provided for in the previous section: ' I (or we) hereby waive the benefit of my (or our) homestead exemption as to this debt (obligation or contract, as the case may be).' " Christian, J., said: " If this provision of the statute is constitutional, the waiver can be enforced." The Court held the act constitutional. This decision is in nowise in conflict with the other decision we have cited, because we have express authority conferred by the Legislature to make the waiver.

*Bowman* v. *Smiley*, 31 Pa. St. 225, 72 Amer. Dec. 738, is a case in conflict with the decisions above cited. There it was held on the broadest grounds, without any statutory authority, that a debtor may waive his statutory privilege of exemption from execution of a portion of his property; that waiver of exemption from execution, made at the time the debt is created, is based on the same consideration as that on which rests the liability to pay, and is irrevocable. The waiver in this case was in the body of the judgment on which the execution issued from the levy of which the debtor sought to have the property relieved. The opinion was delivered by Strong, J., in 1858, and no case is cited in the opinion.

But in *Firmstone* v. *Mack*, 49 Pa. St. 387, 88 Amer. Dec. 507, the same Court expressly held that an agreement of a laborer to waive the proviso of the statute exempting wages

from attachment, embodied in a note signed by him, is void. In this case, Woodward, C. J., said: "Without any very great refinement, distinction may be taken between the Acts of 1849, and this proviso in the Acts of 1845; but still it is the popular, and perhaps the fairest, mode, to regard them both as exemption statutes, which confer upon the debtor an option. That he may waive this option under the act of 1849, not only results out of the nature of the thing, but has been expressly declared in many cases; in some, however, with regrets expressed that we did not set out with a different construction, and hold the privilege or option indefeasible. If it were *res integra;* if, with the experience and observation we have had, we were now for the first to pass upon the question whether debtors could waive their rights under the act of 1849, or widows theirs under the act of the fourteenth of April, 1851,—we would be very likely to deny it altogether, and stick to the statutes as they are written. And here we have a new case. We have never decided that a debtor may repeal the proviso in the act of 1845, and public policy pleads strongly against such decision. If we make it, we bring on the litigation which has sprung out of our decisions upon the act of 1849,—the inconvenience to employers before adverted to, and the temptations to weak debtors to beggar their families in the behalf of sharp and grasping creditors. We will not therefore strain the proviso to fit it to our construction of the exemption statutes, but will leave it to its natural operation as it is expressed. The Legislature having said that justices shall not attach wages, we will say they shall not, though a particular debtor has said they may. * * * We think, on the whole, that our duty will be but performed by declaring the agreement to waive the proviso void."

It is apparent that there is no serious conflict of decisions on the proposition that where the statute provides for the exemption of property, that a debtor can not, by a mere executory contract, bind himself to waive the benefit of the statute. From this it is argued that when such exemptions are provided for by statute, that the debtor can not, even when there is no statute forbidding it, incumber by lien either his personal property or his homestead set apart by

him, so as to deprive him from claiming the benefit of the exemption. This is a very different proposition from the other. We have seen that in several of the decisions we have cited the distinction is made; and while they hold that he can not in advance, by executing a contract, bind himself in the note or other contract to waive the exemption as to such note or contract, yet he may pledge specific property for a debt, and it will not then be exempt from the pledge under the exemption statute. The general rule clearly and distinctly settled is that, in the absence of constitutional or statutory prohibition, a debtor may sell or mortgage his property to him set apart as a homestead. *Jones* v. *Yoakam*, 5 Neb. 265; *In re Cross*, 2 Dill. 320; *Smith* v. *Mallone*, 10 S. C. 39; *Lee* v. *Moore*, 14 Cal. 492; *Rector* v. *Rotten*, 3 Neb. 171; *Gaine* v. *Casey*, 10 Bush 92; *Godfrey* v. *Thornton*, 46 Wis. 677, 1 N. W. Rep. 362; *Jordan* v. *Peak*, 38 Tex. 529; *Brame* v. *Craig*, 12 Bush 404; *Smith* v. *Marc*, 26 Ill. 150; *Stewart* v. *Mackey*, 16 Tex. 56, 67 Amer. Dec. 609.

In the case above cited from 2 Dill. 320, (*In re Cross*,) it was held that under the statute of Nebraska the husband and wife may make a valid mortgage of the homestead property; and that an express waiver of the homestead right is not essential to the validity of such mortgage. Dillon, J., after quoting the statute which provides for the exemption of the homestead property, says: "There is no provision in the statute prohibiting the alienation, sale, or mortgage of the homestead, or of any of the other property exempted by the statute from judical sale; nor is there any provision respecting the mode of conveying the homestead; but there are general provisions relating to the manner of conveying real property, in conformity with which the mortgage here in question was executed. Under these circumstances, I perceive no difficulty in the question here presented. The legal title to the lots occupied as a homestead being in the husband, he and his wife, by joining in an absolute conveyance thereof, might undoubtedly make to the purchaser a perfect title. There being no restriction on the right of disposition, I think it equally clear that they could in this mode make a valid mortgage upon the homestead. "

In *Bank* v. *Lyon*, 52 Miss. 181, Simrall, C. J., quoted the

statute as follows: "That it shall not be lawful for a married man to sell or otherwise dispose of his homestead without the consent of his wife; and no deed of conveyance from the husband for the homestead, shall be valid unless the wife join in such conveyance." He also quoted another section, and said: "These sections lay down a mode by which the debtor may have allotted to him his homestead, and also what shall be done if the premises can not be divided so as to give the debtor what will not exceed $2,000 in value. In any event, that seems to be the *ultimatum*, that the law subtracts from the debtor's property for his benefit. * * * The prohibition applies to no more of his property than what the law has defined to be his homestead. As to all the residue of his real estate, his power of sale and disposition is not abridged by the act of April 18, 1873, although that residue may be parcel of the rural plantation and residence, or the town, or city residence. * * * The conveyance of Lyons to Harvey and Shackleford was of no validity to the extent of $2,000 in value of the exemption in the premises which constitutes the debtor's family residence; but as to the excess it was a valid incumbrance on the property." This was a simple deed of trust in which the wife did not join. This case recognizes the general rule as we have stated it; and still another rule: that where a statute points out a certain mode in which the homestead may be incumbered, or declares that no incumbrance shall be put upon it without certain things being done, that mode alone must be followed, or the attempted lien does not attach to the property. *Boyd* v. *Cudderback*, 31 Ill. 113; *Richards* v. *Chase*, 2 Gray 383; *Wing* v. *Cropper*, 35 Ill. 256.

The Constitution of Nevada provides: "A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the consent of husband and wife, when that relation exists: * * * provided, the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife; and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated." In March, 1865, the Legislature passed the act declaring that "no mort-

gage or alienation of any kind, made for the purpose of se-
curing a loan or indebtedness upon the homestead property,
shall be valid for any purpose whatsoever." The court said :
" The Legislature exceeded its power in passing the law in
question, for it has said therein that these provisions of ex-
emption should apply to a lien created by husband and wife,
which the Constitution has expressly said it shall not." *Dun-
ker* v. *Chidic*, 4 Nev. 823.

Article 7, § 1, Const. Ga., adopted in 1868, is as follows:
" Each head of a family, or guardian or trustee of a family of
minor children, shall be entitled to a homestead of realty to
the value of $2,000 in specie, and personal property to the
value of $1,000 in specie, both to be valued at the time they are
set apart; and no court or ministerial officer in this State
shall ever have jurisdiction or authority to enforce any judg-
ment, decree, or execution against said property so set apart,
including such improvements as may be made thereon, from
time to time, except for taxes, money borrowed and ex-
pended in the improvement of the homestead, or for the pur-
chase-money of the same, and for labor done thereon, or ma-
terial furnished therefor, or removal of incumbrances thereon.
And it shall be the duty of the general assembly, as early as
practicable, to provide by law for the setting apart and val-
uation of said property, and to enact laws for the full and
complete protection and security of the same to the sole use
and benefit of said families as aforesaid." In 1868 the Leg-
islature passed an act, one provision of which declared, to
the property set apart as a homestead : " Said property so
set apart can not be incumbered or aliened by the husband ;
but if the same be incumbered and sold by him and his wife
jointly, or if they, with the approval of the ordinary for the
time being, indorsed on the incumbrance or deed, said in-
cumbrance or deed shall be as valid as if said property had
never been so set apart." In 1876 the Supreme Court of
Georgia held that, " after a homestead has been claimed and
set apart, it can not be incumbered by mortgage, except for
the objects specified in the Constitution. A mortgage on the
homestead, executed by husband and wife, and approved by
the ordinary, which purports to be made to secure a debt
for money borrowed, ' to enable us to carry on our farming

interests on our farm in Jones county, our present home-
stead,' can not be foreclosed if the truth be that the 'mort-
gage was not given for taxes, or for money borrowed and
expended in the improvements on the homestead, or for the
purchase-money of the same, or for labor due thereon, or
material furnished therefor, or the removal of incumbrances
thereon.' It was error to strike out the wife's plea setting
up this defence in resistance to foreclosure." It does not ap-
pear when the mortgage was executed, and no statute was
cited by the judge in his very short opinion, of but a few
sentences. Bleckly, J., said: "The wife's plea negatives
expressly all the objects for which the homestead can be in-
cumbered under the constitution of 1868,—Code, § 5,135,
[which is the constitutional provision.] Assuming the plea
to be true, the mortgage can not be enforced against the
property while the homestead right is in existence." If the
statute which I have quoted, which is found in the Georgia
Code of 1873, was in force when the mortgage was executed,
this is a decision that such statutes was unconstitutional

In *Van Wickle* v. *Landry*, 29 La. Ann. 330, it was held
that " a mortgage on property exempt under the homestead
act can not be enforced and the owner of such property may
sell the same *free from the mortgage* he has imposed on it."
The suit was upon a promissory note of defendant, the pay-
ment of which was secured by a mortgage on a tract of land
containing about 67 acres. The plaintiff asked payment for
the amount of the note and interest, and for the recognition
and enforcement of the mortgage. The defendant admitted
the execution of the note and mortgage, but denied that the
mortgage could be recognized or enforced, because the prop-
erty was exempt from seizure by the provision of the home-
stead act of 1865. Manning, C. J., said : " If this were a *nova
quæstio* in this Court, whether the execution of a mortgage by a
debtor is not of itself a waiver of the exemption of the property
mortgaged, we should be inclined to give to this deliberate
act of the mortgagor a significance and effect in keeping with
the express declaration of the mortgagee ; but the scope and
effect of the act providing for the exemption has been too
often adjudicated by this Court to permit its consideration
as an original proposition, and it is in deference to the doc-

trine of *stare decisis* that we adhere to the ruling already made."

In the case of *Lanahan* v. *Sears*, 102 U. S. 318, it was held that where a party, on receiving an absolute deed, covenants with his grantor to reconvey the lands when the money which it was given to secure shall be paid, both instruments must be taken together as constituting a mortgage; and, further, that the mortgagee of a homestead in Texas can not maintain ejectment therefor if the "forced sale" thereof be prohibited by the Constitution of the State which was in force at the date of the mortgage. This was an appeal from the Circuit Court of the United States for the Western District of Texas. Section 15, art. 12, of the Constitution of Texas, adopted in 1868, is as follows: "The Legislature shall have power, and it shall be their duty, to protect by law from forced sale a portion of the property of all heads of families. The homestead of a family, not to exceed two hundred acres of land, not included in a city, town, or village,) or any city, town, or village lot or lots not to exceed five thousand dollars in value at the time of their designation as a homestead, and without reference to the value of any improvements thereon, shall not be subject to forced sale for debts, except they be for the purchase-money thereof, for the taxes assessed thereon, or for labor and material expended thereon; nor shall the owner, if a married man, be at liberty to alienate the same, unless by the consent of the wife, and in such manner as may be prescribed by law." The Circuit Court overruled a demurrer to the injunction bill, and, the defendant declining to answer, the court decreed in favor of the complainants.

Mr. Justice Field, who delivered the opinion of the Court, after referring to the constitutional provision, said: "The premises in question, therefore, could not be sold under any decree in a suit for the foreclosure of the mortgage. The prohibition of the Constitution extended to any species of compulsory disposition of the homestead, whether denominated a sale or otherwise. A similar prohibition in the Constitution of 1845 was so construed by the Supreme Court of the State in *Sampson* v. *Williamson*, contained in 6 Tex. 101. In that case, Chief Justice Hemphill said that 'the Constitution obviously intended that the homestead should be ex-

empted from the operation of any species of execution, or any forced disposition of the property, whether partial or total, which would disturb the family in the quiet and uninterrupted possession of their home, with the property thereto attached. The beneficence of the provision has a much wider range than to protect the family from a sale which would utterly extinguish all right in the property. It shields them, also, from deliveries of the property, or from any forcible appropriations of its rents, issues and profits. It protects the domestic sanctity from every species of intrusion which, under color of law, would subject the property by any disposition whatever to the payment of debts.' The appellant is the owner of the mortgage in this case, and, aware— so states his counsel—that he could not enforce it against the homestead in the State Courts, as these mortgages can only be enforced by a decree of sale, commenced an action of ejectment for the premises in the Circuit Court of the United States, contending that the mortgage passed the legal title as against the mortgagors, and that, as its owner, he had a right to recover the possession of the premises for default in the payment of the notes secured. He sought, in other words, to get around the State Constitution by the form of his procedure in the Federal Court. We do not think that its wise and beneficent purpose of securing a home to the family against the vicissitudes of fortune can be thus easily frustrated. A forced dispossession in ejectment is as much within the prohibition as a forced sale under judicial process." The enjoining the action of ejectment was accordingly affirmed.

The Supreme Court in this cause but does what it always had done,—recognized the construction which the court of last resort in a State puts upon its own Constitution. It here recognized the distinction made by the Supreme Court of Texas, that a sale under a decree of foreclosure was a "forced sale" within the meaning of the constitutional provision, and inhibited by it. But the very case cited by Mr. Justice Field, *Sampson* v. *Williamson*, 6 Tex. 101, makes a distinction which, to my mind, is more fanciful than real, between a mortgage with no power to sell, and a mortgage or deed of trust, with power therein to sell the premises. A sale under a decree of foreclosure, the court says, is a " forced

sale;" while the sale by an individual under the power given by the instrument is not. In the case in 6 Tex. it was held that a forced sale is one which is made under the process of the court, and in the mode prescribed by law. Therefore the homestead which is exempted by the Constitution from " forced sale " can not be sold under the process of the court; and it matters not what form the contract assumes, nor how willing the head of the family may be, it is an immunity conferred by the Constitution for purposes beyond the mere pleasure of the individual, and can not be renounced. It further holds that a general power of alienation includes the power to mortgage; that the head of a family, if a married man, with the assent of his wife, in the form prescribed by law, may make an absolute sale of the homestead, or may mortgage it, with a power of sale by the mortgagee on default of payment. A mortgage depending for its enforcement on judicial process would be ineffectual, because a sale under such process would be " forced;" but a sale under a power in a mortgagee or trustee would not be a " forced sale."

In *Black* v. *Rockmore*, 50 Tex. 95, the Court, by Bonner, J., said: "As an abstract proposition, it would seem to accord fully with justice that both the husband and wife and their estate should be bound by an express agreement, entered into with all the formalities of law, to make the homestead a security for an indebtedness, created, perhaps, upon the very faith of this security. Such contracts, when coupled with a power of sale, have been repeatedly held valid if executed in the lifetime of the husband. *Jordan* v. *Peak*, 38 Tex. 429. As limitation was placed upon the power to encumber the homestead, it is perhaps to be regretted that the distinction first intimated in the case of *Sampson* v. *Williamson*, 6 Tex. 102, has obtained by subsequent decisions approving it, which discriminated against this power when sought to be enforced under the safeguards of judicial process, and in favor of it when executed by the unrestrained will of a trustee, who is generally the beneficiary in the trust."

In *Wing* v. *Cropper*, 35 Ill. 256, it was held that a sale by a decree of a court of equity, in a suit to foreclose a mortgage, under an order to the master to make the sale, is a forced sale, as much so as if the sale were made under a *fieri*

*facias;* that such a case is distinguishable from the cases of *Smith* v. *Marc, supra,* and *Ely* v. *Eastwood,* in 26 Ill. 108, where the sales were made under a power to sell and not by the order or decree of any court.

In *Peterson* v. *Hornblower,* 33 Cal. 266, the court holds that the phrase " forced sale, " as used in the eleventh article, § 15, Const., which provides that the " Legislature shall protect by law from forced sale a certain portion of the homestead and other property of all heads of families, " and, where used in the several statutes passed in pursuance of this constitutional requirement, is not synonymous with " sale on execution, " etc., but means a sale against the will of the owner, and does not apply where the owner consents directly to the sale, or does so indirectly, by consenting to or doing those acts or things that necessarily or usually eventuate in a sale ; as for instance, a sale under a power contained in a mortgage, or a decree of foreclosure. This decision is in accord with the current of authority ; nearly all cases so hold and, it seems to us, with reason. It is hard to see how a sale can be called " forced " where one consents, either directly or indirectly, that it shall be made, and in the very instrument in which the lien is created. He does it directly when he executes a power of sale, and he does so indirectly when he does that which at the time was intended in a certain contingency should eventuate in a sale of the property.

In *White* v. *Owen,* 30 Gratt. 43, it was decided that a deed of trust to secure a debt executed by the grantor and his wife, conveying real and personal property which had been previously set apart by the husband as his homestead, has priority over the homestead exemption, and the said property may be subjected to satisfy the debt. The Constitution of Virginia provides that every householder or head of a family shall be entitled to hold his property, to be selected by him, not exceeding the value of $2,000.00, in addition to what is exempted by the poor laws, " exempt from levy, seizure, garnishing, or sale under any execution, order, or other process. " Another section of the same article declares : " Nothing contained in this article shall be construed to interfere with the sale of the property aforesaid, or any part thereof, by virtue of any mortgage, deed of trust, pledge,

or other security thereon." The Legislature passed an act as to homesteads, and, among other things, provided that the homestead so set apart " shall not be mortgaged, incumbered, or aliened by the owner, if a married man, except by the joint deed of himself and wife, executed and acknowledged after the manner of conveyance of lands of a married woman." While Anderson, J., said the Legislature had gone beyond the requirements of the Constitution in the restriction, it seems that point was not involved in the case, as husband and wife united in the deed as provided by the statute.

Mr. Freeman, in his note to *Poole* v. *Gerrard*, 65 Amer. Dec. 482, has well and forcibly said : "The law of homestead is so entirely statutory, and the statutes of the different States concerning it are so various, and so often amended, that it is difficult to formulate any general principles or rules relating to any branch of the subject. There is, however, a fair degree of uniformity of statutory and case law upon the general subject of conveyance of homesteads. * * * The power of alienation is not derived from the statute relating to alienation of homestead. It is an incident of the ownership of the property, independent of the homestead law; and the directions and prohibition of the statute as to the alienation are mere restrictions upon this antecedent power. Without any such restriction, the property passes by a conveyance as if there were no homestead. No express waiver of the homestead is essential, unless the statute requires it, because, the property having passed by the conveyance, the homestead necessarily ceases."

From our investigation of this interesting subject, these propositions are naturally deduced : That the people in their Constitution, as far as future debts may affect it, have the right to provide for any sort of a homestead, guarded as they please ; subject to restrictions, or without restrictions ; to prohibit the owner of the homestead from incumbering it, or to permit it to be done as in their wisdom they may see fit. That, unrestricted by the Constitution, the Legislature may exercise the same power. That where there is neither constitutional nor statutory prohibition, as incident to the right of ownership, the owner of the homestead may sell or incum-

ber it ; and such sale or incumbrance will be as valid as if the property had not been set apart as a homestead. That, if the statute points out any particular mode by which the owner of the homestead may sell or incumber it, to that extent his power over it is restricted ; that particular mode must be adopted, or the sale or incumbrance is invalid. That, where the Constitution or statute is silent on the subject, a waiver of a debtor's right to claim personal property as exempt from execution, where attempted to be made by an executory contract, as a clause in a note or contract, " waiving the benefit of all exemption laws, " is ineffectual, and will not be enforced. That the sale of the homestead under a deed of trust, or under a decree of foreclosure of a mortgage thereon, is not a " forced sale, " within the meaning of the Constitution, which exempts a homestead from " forced sale. "

We will now examine our own constitutional and statutory provisions as to the subject, and see if, under these principles, the deeds of trust are valid or otherwise. Section 48, art. 6, Const. 1872, provides that " any husband or parent residing in this State, or the infant children of deceased parents, may hold a homestead of the value of one thousand dollars, and personal property to the value of two hundred dollars, exempt from forced sale, subject to such regulations as shall be prescribed by law : provided, that such homestead exemption shall in no wise affect debts or liabilities existing at the time of the adoption of this Constitution : and provided, further, that no property shall be exempt from sale for taxes due thereon, or for the payment of purchase-money due upon said property, or for debts contracted for the erection of improvements thereon. " In *Speidel* v. *Schlosser*, 13 W. Va. 686, a majority of this Court held that this section of the Constitution does not, *ex proprio vigore*, confer a right to a homestead. It simply imposed on the Legislature the duty to pass an act whereby a homestead of not less than $1,000.00 might be claimed by any husband or parent residing in this State, or the infant children of deceased parents, which should be free from forced sale for debts or liabilities, other than those named in the said section 48, as deemed proper by the Legislature. The same point was decided in *Holt* v.

*Williams*, 13 W. Va. 704. Here is clearly no countenance given to the idea that it was the design of the Constitution to take away the dominion that the owner himself had over his property, and to deny him the right to sell or incumber the homestead. It gave him the right to hold, as exempt from "forced sale," a homestead of the value of $1,000.00, under such regulations as might be prescribed by law, but did not deny to him the right to dispose of the homestead as he chose. It was a *privilege* secured to him, but not putting his property beyond his control. It did not evince a public policy that it was necessary that $1,000.00 dollars of his property should be set apart for the use of his family beyond his own control over it. This Court, in *Donaldson* v. *Voltz*, 19. W. Va. 156, held that section 6, ch. 193, Code 1872–73, so far as it excepts from the benefit of the exemption from execution debts due for rent, is in violation of section 48, art. 6, Const. If the Legislature did its duty, and put in force the forty eighth section of article 6 of the Constitution, they must of course be governed by its provisions, and not provide for exceptions to the right of exemption not specified in the Constitution.

The first homestead act under this Constitution is chapter 193, Acts 1872–73, which provides, by section 9, that "any husband or parent, desiring to obtain the benefit of such homestead, shall make a declaration of such intention, and therein describe, with convenient certainty, such homestead, so that it may be distinguished from other property. If such husband or parent should die before making and recording a declaration of such intention, the same may be made by the widow, guardian of the infant children, or some person appointed by the Circuit Court or County Court of the county for that purpose; which declaration of such intention shall be acknowledged before some officer authorized to take acknowledgment of deeds for record, which the party shall have duly recorded in the clerk's office of the County Court of the county in which such homestead is situated, in a book to be kept for the purpose." All this was done in this case.

Section 11 provides that "any such husband or parent, except a married woman, at the time of contracting a debt,

may in writing waive the right to claim the benefit of such homestead as to such debt: provided, in the case of a husband, his wife shall join him in such waiver; and their acknowledgment, and her privy examination, be taken and recorded as provided for in case of deeds of conveyance." It is argued from this right being conferred that it is the only mode in which they could agree that the homestead should be incumbered. But we have seen, where the statute is silent on the subject, that the courts have generally held that no such waiver could be in advance made by an executory contract. This the Legislature knew, and by this statute authorized it to be done. But in this statute is indicated no intention to deprive the owner of the homestead from selling it, or executing a deed of trust on it. It was under this act (chapter 193) that the homestead in this cause was set apart, and of course this is the law that must govern it. Whether a subsequent Legislature could make it subject to debts, or change it in any way, the right of the owner to have entire control over it, by selling or incumbering it, does not arise in this case, as it was not attempted.

The next act on the subject is chapter 114, Acts 1877, in which, in section 3, occurs this language: "But nothing herein contained shall affect or impair any right acquired under chapter 193 of the Acts of 1872–73." In this act the manner of setting apart the homestead is different. In this act is no repealing clause, nor is there any attempt to restrain the owner in his control over the homestead.

The last act on the subject is chapter 19, Acts 1881, (Warth's Code, ch. 41.) In section 32 of this chapter it is provided: "But nothing herein contained shall affect or impair any right acquired under chapter 193 of the Acts of 1872–73." In this act, in section 33, it is provided that if the value of the homestead was more than the sum of $1,000.00 at the time it was set apart, or by reason of permanent improvements put upon it after it was set apart, a creditor could file his bill to subject the excess to his claim. Section 34 provides that, " in the case of the death of a husband or parent owning such homestead, the benefit thereof shall descend to his minor children, and shall be held and enjoyed by them as such homestead until all of the said infants at-

tain the age of twenty-one years, unless they sooner die."
There is nothing in the act except said section 34 restricting
the right of the owner over said homestead, even if that does
so, and nothing said about his right to waive the exemption
or incumber the estate. What the effect of this statute will
be on the owner's right to execute a deed of trust on such a
homestead does not here arise, as this statute does not con-
trol the homestead sought to be exempted in this case. The
act of 1872–73 controls this case; and, as we have before
seen, it left the owner free to incumber his homestead if he
chose to do so. Both the deeds of trust are valid, as the
grantors therein had full power to execute them.

But it is insisted that the court erred in refusing to set
aside the sale. Affidavits were filed in support of the mo-
tion to set aside the sale, because it was claimed the property
sold for an inadequate price, and thereupon the purchaser
offered to let the report of the sale be corrected, and the
property reported as sold to him for $2,500.00. This the
court did, and the sale was confirmed to Clark at $2.500.00.
The affidavits for the owner stated that "affiants believe that
in the *near future*, that the said property can be sold for an
advance of from $500.00 to $1,000.00 over the price it was
sold to James Clark." Clark at once offered the $500.00 ad-
vance, and the court accepted it. The affiants did not say
that at the time it was sold it would have brought· $2,500.00
or $3,000.00, but they believe that it would in the *near fu-
ture* bring that price. In *Kable* v. *Mitchell*, 9 W. Va. 492,
it was held that the court may, in the exercise of a sounc'
discretion, either affirm or set aside the sale where, from the
facts, evidence, and circumstances before it, it appears
clearly that the sale was made at a grossly inadequate price ;
and the court may solve the question upon affidavits or
depositions in connection with the fact that a greatly larger
price is offered to the court for the land, and secured, or of-
fered to be secured; or it may set the sale aside upon any
evidence or fact or facts before it which clearly shows that
the land sold at a greatly inadequate price. See, also, *Hil-
leary* v. *Thompson*, 11 W. Va. 113; *Hartley* v. *Roffe*, 12 W.
Va. 401 ; *Beaty* v. *Veon*, 18 W. Va. 291.

In *Tremble* v. *Herold*, 20 W. Va. 602, it was held that this

Court will not set aside a sale of land made by a commissioner, on the ground of inadequacy of price, when there had been four sales of the land, three of which had been set aside,—the first, for inadequacy of price; the second, because of a cloud upon the title; and the third, on an upset bid. It is difficult to lay down any rule applicable to all cases; and whether a court will confirm a sale made by a commissioner under its decree must, in a great measure, depend upon the circumstances of each case. *Hartley* v. *Roffe*, 12 W. Va. 404.

Under the circumstances of this case, we do not think the court would have been justified in refusing to confirm the report, and setting aside the sale. The motion must be decided on the ground of inadequacy of price alone. We have held the deeds of trust were valid. As we have shown, there had been two public sales of the property, not far apart, and at each sale it brought $2,000.00. True, the mere opinion of witnesses say it was worth $3,000.00, and then say they thought in the *near future* it would bring $2,500.00 or $3,000.00. The public sales test its value, when fairly made, better than the mere opinions of witnesses. One person thought it sold at its full value. It would have been error to set aside the sale under the circumstances, or at least the court did not err in refusing to set it aside. There is nothing in the offer of Clark to show it sold at an inadequate price, as even the $2,500.00 would not pay his liens against it. The acceptance of Clark's advance bid, under the circumstances, was not, therefore, an error to the prejudice of the appellant. As we have seen, it would not have been error in the court to have refused to set aside the sale without any such offer.

It is also assigned as error that the court, in its decree, required the debtor to give a bond of $200.00, before the sale could be set aside. The decree provided : " But if the plaintiff, or some one for him, shall, within twenty days from this date, give to the special commissioner a bond with good security in the penalty of $200.00, with condition that, on a resale of said property, it shall sell for $2,750.00, or the parties to the bond will pay $200.00, then the said commissioner shall resell the said property on the same terms, and

after the same advertisement as before; otherwise the said sale shall stand confirmed to the purchaser at the price of $2,500.00." Of course, this was all irregular; no advanced bid had been made by the debtor, and a bond could not be properly executed payable to the commissioner. The manner in which a sale can be set aside on an advance bid is shown in *Stewart* v. *Stewart*, 27 W. Va. 177. This provision should not have been inserted, and the decree must be corrected by striking out said provision; and as the error was not to the prejudice of the appellant when it is thus corrected, both decrees appealed from are affirmed, with costs.

AFFIRMED.